

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0130-10

**ANDREW WOODARD, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS BRAZORIA COUNTY**

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, KEASLER, HOLCOMB, and COCHRAN, JJ., joined. KELLER, P.J., filed a concurring opinion. COCHRAN, J., filed a concurring opinion in which PRICE, and WOMACK, JJ., joined. MEYERS, J., did not participate.

## O P I N I O N

In appellant's trial for the indicted offense of murder, the trial court submitted a jury instruction on an unindicted conspiracy to commit aggravated robbery offense, which does not meet the definition of a lesser-included offense of the charged murder offense under Article 37.09(1), TEX. CODE CRIM. PROC., and under this Court's decision in *Hall v. State*, 225 S.W.3d 524 (Tex.Cr.App. 2007). The jury convicted appellant of this conspiracy to commit aggravated robbery offense. The

court of appeals decided that this was jury-charge error that "egregiously harmed" appellant under this Court's decision in *Almanza v. State*[1] by depriving appellant "of his valuable constitutional right to notice of the criminal charges brought against him."[2]  We exercised our discretionary authority to review this decision.[3]  We will reverse.

Appellant's murder indictment alleged that appellant murdered the complainant either by intentionally or knowingly causing the complainant's death or by committing an act clearly dangerous to human life with the intent to seriously injure the complainant.  The trial record reflects that the State voir dired the venire on party liability under Section 7.02(b), TEX. PENAL CODE, which provides that conspirators to a felony are criminally responsible for felonies committed by other conspirators in furtherance of the conspiracy if the other felonies should have been anticipated.[4]  For example, the State presented the following hypothetical to the venire:

[STATE]: Usually somebody will raise their hand and say, you know, like in a bank

---

[1]

686 S.W.2d 157, 171 (Tex.Cr.App. 1985) (op. on reh'g).

[2]

*See Woodard v. State*, 300 S.W.3d 404, 406 (Tex.App.–Houston [14th Dist.] 2009).

[3]

The ground upon which we granted review states:

The Court of Appeals erred in finding egregious error in the submission of the unobjected-to lesser charge for the offense of conspiracy to commit aggravated robbery.

[4]

Section 7.02(b) provides:

If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

robbery. Somebody will use that example if you're the getaway driver. You know, let's say that, Juror Number 7, you and I enter into an agreement with a couple of other people that we're going to go rob the First National Bank of Lake Jackson. And the agreement is that you and your brother and your cousin and somebody else, they are going to go into the bank with guns and I'm going to stay outside and I'm going to be in the car. I'm the getaway driver. I'm going to be the lookout and the getaway driver. I'm going to stay there and wait for y'all to rob the bank. Okay?

Now do you think if you go into that bank and we've all agreed to commit this felony of Aggravated Robbery in that case, robbing a bank with a deadly weapon, if you were to kill somebody, if you were to kill the clerk or the security guard or somebody like that, do you think that me out in the car should be charged with the murder as well?

The defense also voir dired the venire on party liability under Section 7.02(b). For example, the defense presented the following hypothetical to the venire:

[DEFENSE]: Well, let's go to 702(b). 702(b), [the State] is talking about, says that, "If in the attempt to carry out a conspiracy to commit one felony another felony is committed by one of the conspirators, all conspirators are guilty of the offense actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out a conspiracy."

You have to find a conspiracy. An example of a conspiracy would be three guys who go into McDonald's after hours. They have got a torch and they are going to burglarize the safe. The place catches on fire and a fireman comes out there to fight the fire and the roof caves in and kills the fireman. That's a conspiracy. Conspiracy to commit burglary of a building and another felony could have been anticipated, the place catching on fire, the firemen coming out and treating it. That's an example of a conspiracy.

Anybody have any problems with that example of a conspiracy? By show of hands, you've got no problems. You understand what conspiracy is. But you have to have some evidence of a conspiracy. Would you agree? Just because two people are there or two people are together doesn't mean a conspiracy. If in the attempt to carry out a conspiracy. So you've got to find that there is a conspiracy to start with. If you don't find a conspiracy to commit a felony in the first place, who cares what happens later on? It's not part of a conspiracy?

Evidence presented at appellant's trial shows that the complainant in this case (Hien Van Ha)

was murdered on the *Miss Carolee* shrimp boat at the docks in Freeport, Texas. Someone placed

a loaded pistol against the complainant's head and pulled the trigger. The complainant's wallet was

located in a field about two miles away. After initially denying any involvement in the offense,

appellant eventually told the police that he and several individuals, including a person named Kevin

Pipkins, went to the docks in a borrowed car to sell the complainant fake cocaine–i.e., "Tylenol

crushed to resemble powdered cocaine."[5] According to appellant's statement to the police, Pipkins

and an unidentified person boarded the shrimp boat while appellant remained at the car. Appellant

heard a gunshot just before Pipkins and the unidentified person returned to the car. Pipkins threw

the complainant's wallet out of the car soon after they left the docks.

The State's theory, however, was that there never was any plan to sell the complainant fake

cocaine. The State presented evidence that appellant and at least two other individuals, including

Pipkins and another person named Sherman Myers, conspired to rob the complainant by using a gun

and that either Pipkins or appellant shot the complainant.[6] The State presented the testimony of

---

[5] *See Woodard*, 300 S.W.3d at 406.

[6] The reporter's record from appellant's sentencing hearing before the trial court reflects that Pipkins was sentenced to 30 years in prison after being separately tried and convicted of murdering the complainant under a jury charge that included a parties instruction. Appellant's judgment in the clerk's record in this case indicates that appellant was sentenced, as a first-degree felon with no enhancements, to 29 years in prison on his conviction for conspiracy to commit aggravated robbery. We note, however, that conspiracy to commit aggravated robbery is a second-degree felony. *See* §§ 15.02(d), 29.03(b), TEX. PENAL CODE. We further note that nothing in the clerk's record, either in the indictment or by some other form of notice, indicates the State's intent to enhance appellant's sentence even though the reporter's record of the guilt phase indicates that appellant pled true to an "enhancement paragraph" immediately after the jury returned its guilty verdict on January 30, 2008, and before appellant's sentencing hearing before the trial court on February 8, 2008. According to this portion of the reporter's record, appellant pled true to having been previously convicted of the second-degree felony offense of burglary of a habitation. *See* § 12.42(d), TEX. PENAL CODE ("if it is shown on the trial of a second-degree felony that the defendant has been once before convicted

Debra Evans, who testified that she saw appellant at her home with a gun while appellant, Pipkins, and Myers conspired to rob the complainant on the night that he was murdered.

> Q. [STATE]: And this person that you refer to as Blue, the Defendant here in the courtroom today, this person was at your house on August 8th of 2006?
>
> A. [EVANS]: Him and Kevin [Pipkins] showed up later that evening.
>
> Q. And what was the purpose of their visit?
>
> A. They had found out about some Chinese man that supposedly had some money and was looking for a woman and they were going to go see him.
>
> * * *
>
> They were going down there [to the docks] to roll him, to rob him, to get some money from him.
>
> Q. And what did the Defendant say specifically that gave you that impression?
>
> A. They pulled a gun out. He pulled a gun out. It was an automatic weapon.
>
> Q. And when you say he pulled a gun out, are you referring to the Defendant?
>
> A. Yes, sir.
>
> Q. And can you sort of show the jury, describe how that occurred?
>
> A. I walk in. Okay. I'm a convicted felon. I'm not supposed to be around firearms. I walked into my living room and he was pulling a gun out. He said, "This is how we can get him. This will take care of him." He had an automatic weapon in his hand.
>
> * * *
>
> Q. But to the best of your recollection can you tell the jury what you heard the Defendant say, specifically say?
>
> A. They were going down to the boat to get the money. That this would work. This would–this will take care of it.
>
> * * *
>
> Q. Now can you please tell the jury what it was you told the police that Blue said that night?

of a felony, on conviction he shall be punished for a first-degree felony").

A. "Fuck a woman.  This will take care of it."

Q. Thank you.  And did he indicate what–in what he said that night, did he indicate what it was that they were after by going down there to the docks?

A. Money.

* * *

Q. Now, Ms. Evans, when this conversation was taking place and the Defendant made those statements, who was around and a party to that conversation?

A. I walked into the room.  Blue, K.P., Kevin Pipkins, and Sherman [Myers] was in the room.

* * *

Q. And what was the reaction of those individuals in response to what Blue said?

A. They were ready to go.  That's what they did.  They left.

After the State rested its case at the guilt phase, appellant moved for a directed verdict which the trial court denied.  Noting that the State's case was based on a conspiracy between appellant, Pipkins and Myers "to commit some felony," appellant argued, in support of his motion for a directed verdict, that there was no evidence that he was involved in a conspiracy to rob the complainant and that any conspiracy to sell the complainant fake cocaine was not a felony:

> [DEFENSE]: On behalf of Andrew Woodard, the Defendant in Cause No. 53468, we would respectfully ask the Court for a directed verdict of not guilty to the offense of Murder.
>
> The State's case in this particular felony is based on a conspiracy, a conspiracy between Mr. Pipkins and Mr. Myers and Mr. Woodard to commit some felony; and during the course of that felony that the murder of Mr. Ha occurred and that they should have anticipated that felony of Murder occurring.
>
> * * *
>
> The Court is also aware that, you know, Mr. Pipkins was convicted of the offense of Murder of Mr. Ha last July, 2007.  The State has brought to the Court no evidence at all of any conspiracy on the part of Mr. Woodard, that he asked Mr. Pipkins to commit a felony, to rob Mr. Ha or to commit the offense of Aggravated Robbery and then the murder ensued after that.  There is no testimony regarding even the ballistics that was used other than that it was a medium sized bullet of a .38 family.  There is no ballistics.  There is no weapon.  There is no conversation in the statements that

you've heard from the officers that were taken regarding anybody seeing a weapon at any time, anybody giving a weapon to Mr. Pipkins–certainly not Mr. Woodard–and any indication that any robbery or felony was going to take place.

At the very most the Court heard that they were going there to sell some more dope. They didn't have any dope. They were going to sell some Tylenol to him. That is not a felony in itself. Even selling a simulated controlled substance is not a felony unless you sell it to a police officer. And in this particular case there is absolutely no evidence of any conspiracy at all. And we respectfully ask the court to grant us a verdict of not guilty as to the offense of Murder as alleged in the indictment.

Not long after this, there was some discussion about the preparation of the trial court's charge. This discussion indicates that the State and the defense were going to prepare the charge that night.

[THE COURT]: All right. Mr. Dowdy [the State's attorney], I spoke to Mr. Taylor [the defense attorney] about the charge. He's prepared to stay here tonight until we get the charge ready so we'll just have the jury here at 9:00 o'clock and we'll be ready to go.

[STATE]: Okay. That's fine with me, Judge. In fact, I was going to give you a rough draft and he's going to have some problems and we're going to work through that.

[THE COURT]: All right. We'll just commit to get that done before we go home tonight.

[DEFENSE]: All right, Your Honor.

The next morning, the trial court and the parties discussed the charge. The State objected to a requested instruction by the defense that the jury should find appellant guilty of the conspiracy to commit aggravated robbery offense if it found beyond a reasonable doubt "that the Defendant is either guilty of Murder or Conspiracy to Commit Aggravated Robbery" but it had "a reasonable doubt as to which of said offenses he is guilty." The trial court overruled the State's objection.

[TRIAL COURT]: Other than the misspelling of the word "offense" on the last page of the verdict form, which is being changed right now, do you have any objections, additions, modifications or changes to the proposed charge?

[STATE]: Your Honor, there is one objection that I have to some proposed language by the defense. The–let me find exactly where it is, Your Honor.

On page 6, the first full paragraph, the defense has requested the instruction that, "If you find from the evidence beyond a reasonable doubt that the Defendant is either guilty of Murder or Conspiracy to Commit Aggravated Robbery under the instructions herein given but you have a reasonable doubt as to which of said offenses he is guilty, then you should resolve the doubt in the Defendant's favor and find him guilty of the lesser offense of Conspiracy to Commit Aggravated Robbery."

And then there is a similar paragraph that begins at the bottom of page 6 and continues on to page 7 that goes from Conspiracy to Commit Aggravated Robbery to Conspiracy to Commit Robbery, and our objection to that is if they find from the evidence beyond a reasonable doubt that the Defendant is guilty of Murder, they should find him guilty of Murder. I think that's a confusing instruction and we would ask that it be deleted from the charge.[7]

[DEFENSE]: May I respond, Your Honor? On page 5 is the application paragraph for Murder. I'm not going to read the whole thing to you. It says, "Then you will find the Defendant guilty of Murder as alleged in the indictment." That's it. The transitional paragraphs are–or the alternative paragraphs, if you want to call it that–come from when the jury is deliberating and they cannot agree as to which offense. This is tracked from that Texas Pattern Jury Charges that they resolve that issue and give the benefit of the doubt to the Defendant.

[THE COURT]: I'm going to deny the State's objection.

* * *

All right. Mr. Taylor, have you had sufficient time to review the proposed charge of the Court?

[DEFENSE]: I have, Your Honor.

[THE COURT]: All right. Other than the misspelling of the word "offense" on the last verdict form, do you have any objections, additions, changes or requested modifications?

[DEFENSE]: No, Your Honor, I do not.

---

[7]

We agree that these are confusing instructions, which could have resulted in the jury convicting appellant of the conspiracy to commit aggravated robbery offense even though the jury might have found beyond a reasonable doubt that appellant was guilty of murder.

The trial court's charge included a Section 7.02(b) jury instruction. During closing jury arguments, the defense argued that there was no credible evidence to show that appellant conspired to rob the complainant. The defensive theory seems to have been that appellant was guilty only of conspiring to sell the complainant fake cocaine which, the defense argued, is neither a crime nor a felony.

> [DEFENSE]: You also got to decide if he entered into a conspiracy with Kevin Pipkins to commit any offense. You are told that in order to find a conspiracy there has to be an intent to commit a felony. The felony that the State wants you to find is an intent to rob. Well, you're going to have to decide whether that exists or not.
>
> * * *
>
> I'm going to read you portions of [appellant's statement to the police] now.
>
> "Before 9:00 p.m. I was at my house walking out the back door. Kevin Pipkins and a black guy that I don't know walked up to me. Kevin Pipkins asked me if I wanted to do a lick. (A lick is a drug run. We take some drugs to someone and they pay for it.) I told Kevin Pipkins I don't sell drugs. I don't have any dope. I told Kevin Pipkins I could get some Tylenol and make it look like some. I got some Tylenol and ground it up to look like powered [sic] cocaine."
>
> Tylenol is not a crime. Selling an individual Tylenol is not a crime. Selling a simulated controlled substance to somebody is not a crime unless you sell it to a cop and represent it to be a controlled substance or you sell it to an agent who is working under the authority and direction of a law enforcement officer or represented to be. Selling Tylenol, giving Tylenol is not a crime, and it sure isn't a felony.
>
> * * *
>
> You've got no evidence at all that he entered into any sort of an agreement at all with Kevin Pipkins or Sherman Myers. Where is it? I don't know where it is. I'm still waiting for it.
>
> * * *
>
> Other than [appellant's statement to the police], Detective Sergeant Houston doesn't help you at all as far as answering the questions as to whether there was an agreement, conspiracy to commit any felony at all, a Robbery and Aggravated Robbery, or whether a weapon would be used, anything more than selling some turkey dope . . . . No evidence of a crime intended on behalf of appellant based on this statement, and you don't have anything to refute it.
>
> That gets us back to Witness Number 6, Debra Evans. Another lovely lady. By her own admissions her past, a thief once, a thief twice, a thief three times. Convicted

of a drug charge in your county not once but twice. And back on August 8th of 2006 there was a lot of people over at her house all drinking, all using crack cocaine, and she was at the top of the list.

Now she's floating in and out and in and out and she said that she sees Kevin Pipkins there and she sees [appellant] there and she sees Sherman Myers there. There sure isn't anybody else to come forward to bolster her to say that they were there. She says that she hears parts of a conversation and she says that she hears them say something about the [complainant] having bought $500 worth of dope already that day but now he wants a woman and she's interested. Not that she herself would prostitute herself, but she's got whores working for her who will sell their bodies for money or for drugs. And she overhears this and she tells you we want the money. Well, who is saying that? She is saying we want the money. There isn't anybody else here who can corroborate what anybody said at that house that night. She told you there was several other people there. No one else can verify what she has to say or that they are even there at that house.

The State argued, during closing jury arguments, that the evidence showed that appellant conspired to rob the complainant, which, under the court's charge (i.e., the Section 7.02(b) instruction), made appellant guilty of murder. For example, the State argued:

[STATE]: We know that somebody is criminally responsible for the conduct of another, the other person who shot the [complainant] in the head, if in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all the conspirators are guilty of the felony actually committed.

Murder. Though having no intent to commit it. You don't have to intend to murder him. If you're a member of this conspiracy if the offense was committed in furtherance of that unlawful purpose and it should have been anticipated.

I'm going to work my way backward. I'll start with "should have been anticipated." How do we know that a murder is something that should have been anticipated from Aggravated Robbery? We talked about that in Voir Dire. The driver of the getaway car for the bank robbery. The guys go in with guns. We know you should anticipate that somebody could get killed. The evidence in this case shows when he says, "It will be easy to get with this"–ask yourself why would it be easy to get with this? Why? Because if he resists we're going to shoot him. That's why. Most people wouldn't resist in the face of a gun. But if he does, we're going to shoot him.

* * *

I want to talk about Debra Evans because it should be clear to y'all that Debra Evans is a crucial witness in our case, obviously. If you don't believe her then you cannot

find him guilty. There is no question about that. Because she provides the evidence that links it all together. She provides the evidence of a conspiracy to commit a Robbery.

\* \* \*

I told you in opening statements that the word conspiracy in Latin literally means to breathe together and that this conspiracy to commit this Aggravated Robbery that ended up being a Murder was breathed into life when this Defendant breathed those words. "It will be easy to get with this. We want the money." And that ended up causing the death of Hien Van Ha.

Now you're going to go back in there and you're going to be asked to elect a foreman and you're going to be asked to deliberate about this and you're going to be asked to make a decision. And the defense has mentioned these other possible charges, Conspiracy to Commit Aggravated, Conspiracy to Commit Robbery. And those are in there, hoping that you might reach a compromise on a lesser charge. But folks, if you believe he's guilty of a Conspiracy to Commit an Aggravated Robbery or a Conspiracy to Commit a Robbery then under the law of parties, he's guilty of Murder. So I ask you do not compromise the truth in this case. There is only one verdict form that applies and that is that he is guilty of the offense of Murder. We've shown that beyond a reasonable doubt.

Under our decision in *Trejo v. State*,[8] the "egregious harm" standard for unobjected-to jury-charge error set out in this Court's opinion on rehearing in *Almanza* applies to the unobjected-to submission of an unindicted offense in the jury charge. Under *Trejo* and *Almanza*, the "actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information releaved [sic] by the record of the trial as a whole." *See Trejo*, 280 S.W.3d at 261 (quoting *Almanza*, 686 S.W.2d at 171 (op. on reh'g)) (internal quotes omitted). Noting that application "of the *Almanza* factors to a conviction for a crime 'totally different' from the indicted offense is problematic," the court of appeals nevertheless addressed these *Almanza* factors and decided that appellant was egregiously harmed essentially because submission of the unindicted

---

[8] 280 S.W.3d 258, 261 (Tex.Cr.App. 2009).

conspiracy to commit aggravated robbery offense in the jury charge deprived appellant of his "due-process right to appropriate pretrial notice of the charges against him." *See Woodard*, 300 S.W.3d at 412.

The State argues that the "true harm, if any, that results from the submission of a lesser [unindicted] offense is that a defendant is subjected to an offense which he was inadequately prepared to defend against" such as, for example, when a defendant "is charged with murder occurring on one day and ends up defending himself against a robbery occurring the next day out of a completely different transaction." The State argues that appellant cannot show "egregious error" in this case because the unindicted conspiracy to commit aggravated robbery offense "arose out of the same transaction and was part and parcel of the charged offense of murder" with the same evidence used to prove both the charged murder offense and the unindicted conspiracy to commit aggravated robbery offense. The State further argues that the "error was not egregious because in no manner was the Appellant placed at a disadvantage in presenting his defense to this lesser [unindicted] offense."[9]

We believe that the portions of the record set out above demonstrate that appellant was not "inadequately prepared to defend against" the unindicted conspiracy to commit aggravated robbery offense and that submission of this unindicted offense did not deprive appellant of his "due-process right to appropriate pretrial notice of the charges against him." The record reflects that appellant knew, since at least voir dire, that he was required to defend against the State's factual theory that

---

[9] The State also considers it relevant to the "egregious harm" analysis in this case that the unindicted conspiracy to commit aggravated robbery offense would be considered a lesser-included offense of the charged murder offense under the "cognate-evidence" approach discussed in, but rejected by, *Hall*. *See Hall*, 225 S.W.3d at 526, 535.

he conspired with others to rob the complainant.

Nevertheless, we note that the federal constitutional rule that "a defendant cannot be held to answer a charge not contained in the indictment brought against him" is not based entirely "on the [due-process] right of the defendant to notice of the charge brought against him." *See Schmuck v. United States*, 489 U.S. 705, 717-18 (1989) (this rule "based **at least in part** on the right of the defendant to notice of the charge brought against him") (emphasis supplied). This rule is also based on the Fifth Amendment's grand jury guarantee that no person "shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." *See United States v. Miller*, 471 U.S. 130, 139-40 (1985) (convicting a defendant of an offense not charged in the indictment violates Fifth Amendment's grand jury guarantee); *Stirone v. United States*, 361 U.S. 212, 218-19 (1960) (same).

Our constitution contains a similar guarantee. *See* TEX. CONST. Art. I, § 10 (providing that "no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury . . .") and its Interpretative Commentary ("The terminology here used is similar to that of the fifth and sixth amendments of the Constitution of the United States, which drew mainly from the English common law for the guarantees set forth, although in many respects the constitutional rights represent an advance upon English law pertaining to the subject matter as known at the time of the creation of the United States Constitution and its first ten amendments."). The right to a grand jury indictment under state law is a waivable right, which "must be implemented by the system unless expressly waived." *See Marin v. State*, 851 S.W.2d 275, 279 (Tex.Cr.App. 1993); *Trejo*, 280 S.W.3d at 263 (Keller, P.J., concurring in the judgment) ("unless waived, an indictment is necessary to vest the trial court with personal jurisdiction in a felony case").

The issue thus becomes whether unobjected-to jury-charge error that violates this unwaived grand jury guarantee meets the "egregious harm" standard under the opinion on rehearing in *Almanza*, which construed Article 36.19, TEX. CODE CRIM. PROC. Article 36.19 states:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of trial.

Noting that Article 36.19 is "inherently ambiguous," the opinion on rehearing in *Almanza* states:

> In studying art. 743[10] and Article 36.19 to determine which, if any, theory[11] is correct, one cannot confidently answer that question from the current statute itself. The statute is inherently ambiguous; it can be read dozens of times without revealing with certainty what the Legislature intended. It is an example of solecism–a puzzling

---

[10]

*See Almanza*, 686 S.W.2d at 160 (op. on reh'g) (stating that Article 36.19 "is the lineal descendant of an act of the 33rd Legislature in 1913, ch. 138, p. 278, which amended what was then art. 743").

[11]

The opinion on rehearing in *Almanza* identified one theory or interpretation of Article 36.19 that "there would never be a reversal for unobjected to error in the jury charge." *See Almanza*, 686 S.W.2d at 161 (op. on reh'g). This opinion states:

> The second theory proceeds on the supposition that the "calculated to injure" and "fair and impartial trial" phraseology describes the test which the Court, at least prior to the 1913 amendment, used for fundamental error. However, under this second theory those phrases now come into play only if there has been an objection at trial to the jury charge, and therefore set up a "harmless error" standard. Further, as this second theory would have it, there is no separate statutory test for fundamental error where no objection has been made to the charge at trial, and indeed the Legislature in 1913 intended to end the doctrine of fundamental error. The second theory thus holds that, if the Legislature in 1913 had its way, there would never be a reversal for unobjected to error in the jury charge.

*See id*. (Citation omitted).

grammatical construction that yields no logical meaning, or any number of any meanings. But since Article 36.19 is just a modernized version of art. 743, an examination of the legislative history of the latter may be helpful.

See *Almanza*, 686 S.W.3d at 166 (op. on reh'g) (citation omitted).

Based on the legislative history of, and case law construing, the statutory predecessor to Article 36.19 (Article 743), the opinion on rehearing in *Almanza* adopted the current construction of Article 36.19. This opinion states:

> So for the stated reasons we hold the clause "or unless it appears from the record that the defendant has not had a fair and impartial trial" is a legislative recognition and acceptance of the fundamental error doctrine and is of independent significance within art. 743 and Article 36.19. Construed this way, the statute says that one reason to reverse for error in the charge arises if the error, having been properly objected to at trial, is harmful and therefore "calculated to injure the rights of the defendant." An independent basis for reversal arises if the error, even though not timely objected to, is so egregious and creates such harm that it deprives the accused of a "fair and impartial trial." Our exegesis of the statute, suggested by legislative history of art. 743, is more defensible than any other reading of the statute and in light of the research, a minuscule portion of which is set out above, does more than the others to respect the meanings which the statutes and caselaw had attached to key phrases in the provision.

See *Almanza*, 686 S.W.2d at 172 (op. on reh'g).[12]

---

[12]

The opinion on rehearing in *Almanza* also states:

After researching Texas statutory and decisional law from 1857 forward, we have concluded that Article 36.19 actually separately contains the standards for *both* fundamental error and ordinary reversible error. If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

On the other hand, if no proper objection was made at trial and the accused must claim that the error was "fundamental," he will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial"–in

Thus, under the opinion on rehearing in *Almanza*, when no proper objection is made to jury-charge error at trial, a defendant may obtain a reversal only in those few situations where the error is "fundamental" or is "egregious[ly] harmful." *See Almanza*, 686 S.W.2d at 171-72 (op. on reh'g) (a "fundamental error must 'go to the very basis of the case'"). And our opinion on rehearing in *Almanza* supports a decision in this case that an unobjected-to and unwaived submission of an unindicted offense in the jury charge followed by a conviction of that offense meets *Almanza's* "egregious harm" standard and should be considered "other relevant information revealed by the record of the trial as a whole." *See Almanza*, 686 S.W. 2d at 171 (op. on reh'g) ("actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel **and any other relevant information revealed by the record of the trial as a whole**") (emphasis supplied) and at 173 ("due process would be violated *per se* by convicting a person for murder when he had been indicted for a totally different offense such as robbery") (emphasis in original);[13] *see also Miller*, 471 U.S. at 139-

_____

short "egregious harm."

In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel **and any other relevant information revealed by the record of the trial as a whole**.

*See Almanza*, 686 S.W.2d at 171 (op. on reh'g) (emphasis in italics in original and emphasis in bold added).

[13] The opinion on rehearing in *Almanza* distinguished this due-process violation from the erroneous premise of this Court's decision in *Robinson v. State*, 553 S.W.2d 371 (Tex.Cr.App. 1977), of "treating 'alternative theories' within a single new code proscription as totally different offenses." *See Almanza*, 686 S.W.2d at 172-73 (op. on reh'g) (situation described in *Robinson* does not present "'fundamental' charge error") *disapproving Robinson*, 553 S.W.2d at 375 (jury charge authorizing aggravated-robbery conviction under aggravated-robbery theories not alleged in

40 (distinguishing conviction for unindicted offense and conviction "because of variances between the indictment and the narrower trial proof"); *Stirone*, 361 U.S. at 218-19 (referring to conviction on an unindicted charge as "fatal error"). Therefore, assuming that appellant simply failed to object to the submission in the jury charge of the unindicted conspiracy to commit aggravated robbery offense, he would be entitled to a reversal of his conviction for this offense under the opinion on rehearing in *Almanza*.

Our decision in *Trejo*, however, also recognized that, if "the record showed that the appellant requested the charge on the [unindicted] lesser offense . . ., he would be estopped from complaining of its inclusion in the charge." *See Trejo*, 280 S.W.3d at 260. We believe that the record in this case fairly reflects that, at the very least, appellant had some responsibility for the jury instruction on the unindicted conspiracy to commit aggravated robbery offense. *Compare id*. ("mere absence of a showing of responsibility for the inclusion of the charge on the [unindicted] lesser offense does not give rise to an estoppel"). The record reflects that appellant helped prepare the charge, including the instruction related to the unindicted charge of conspiracy to commit aggravated robbery, to which the State unsuccessfully objected. *See* Footnote 7. This is a great deal more than just simply not objecting to the charge or just stating "no objection" to the charge. *See Bluitt* v. State, 137 S.W.3d 51, 53 (Tex.Cr.App. 2004) (a defendant's statement of "no objection" to erroneous jury charge "shall be deemed equivalent to a failure to object" and the defendant "may raise such unobjected-to [jury] charge error on appeal, but may not obtain a reversal for such error unless it resulted in egregious harm"). This demonstrates a course of conduct falling somewhere between a waiver of the grand-

---

indictment was "fundamental error").

jury guarantee under *Marin*[14] and an express request for inclusion of a jury instruction on the conspiracy to commit aggravated robbery offense under *Trejo*. Under these circumstances, we decide that appellant may not be heard to complain for the first time on appeal that the trial court erred to instruct the jury on the unindicted conspiracy to commit aggravated robbery offense.

The judgment of the court of appeals is reversed, and the cause is remanded there for further proceedings not inconsistent with this opinion.

Hervey, J.

Delivered: October 6, 2010
Publish

---

[14]

*Cf. Joseph v. State*, 309 S.W.3d 20, 24-26 (Tex.Cr.App. 2010) (in absence of express and explicit waiver of *Miranda* rights, totality of circumstances may show voluntary waiver of these rights) and at 29 (Cochran, J., concurring) ("Under some circumstances, if a suspect has been fully warned of his rights and has indicated that he understands those rights, a course of conduct consistent with waiver 'may' support the conclusion that the suspect has waived his *Miranda* rights.").