

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00373-CR

JOHNNY RAY WALLER                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## OPINION ON REHEARING

----------

On July 7, 2011, this court issued an opinion reversing the trial court's judgment and remanding the case for a new trial. After due consideration, a majority of this court agrees to grant the State's motion for rehearing to delete part IV of our prior memorandum opinion. The substance of the remainder of our prior opinion, authored by Justice Dauphinot, and set forth below, remains unchanged.

We withdraw our prior memorandum opinion, concurring memorandum opinion, and judgment dated July 7, 2011, and substitute the following in its place.

A jury convicted Appellant Johnny Ray Waller of arson causing the death of Geovany Gustavo Guerra, burglary of a habitation with intent to commit arson, and felony murder of Guerra in the course of committing arson, all charged in separate counts of a single indictment, and assessed Appellant's punishment at forty-five years' confinement for each count. The trial court sentenced him accordingly, ordering that the sentences run concurrently.

Appellant brings ten points, arguing that the trial court reversibly erred by denying his challenges for cause of veniremembers who could not consider the full range of punishment and by submitting a jury charge that did not require a unanimous jury verdict or contain an accomplice witness instruction; that the evidence is factually insufficient to support his convictions for arson as a party and for felony murder as a party; and that trial counsel rendered ineffective assistance by failing to request an accomplice witness instruction in the jury charge. Because we hold that the trial court reversibly erred by failing to grant Appellant's challenges for cause of veniremembers who could not consider the full range of punishment, we reverse the trial court's judgment and remand this case to the trial court for a new trial.

**I. Summary of the Facts**

2

Appellant and several other people had gone to James Griggs's Haltom City apartment one night because Appellant believed that Griggs owed him money from a drug buy. At the time, Griggs was at his girlfriend's apartment in the same complex. Around 2:00 or 3:00 a.m., from his girlfriend's apartment, Griggs saw several people walking to his apartment. He also saw two vehicles in the parking lot, one of which he recognized as Appellant's girlfriend's truck.

Griggs's neighbor, Tara Daubig, testified that she and a friend were on her balcony when she saw a black SUV driving around the parking lot. A black Ford pickup truck met the SUV in front of her apartment, and one man got out of the truck. About three men got out of the SUV. The group headed toward Griggs's apartment, shouting, "Where's James?" and "We'll find you." She heard them bang on a door. When they left, she noted that it was 2:30 a.m. Around 2:55 a.m., Griggs received a text from Appellant's girlfriend that they were gone from his apartment.

Melissa Svec, another neighbor, awoke between 4:00 a.m. and 4:30 a.m. to the smell of smoke. She had been awakened briefly about forty-five minutes before by a bang coming from a nearby apartment.

A third neighbor, Sandy Bethea, testified that she awoke to the smell of charcoal lighter fluid around 4:00 a.m. She went back to sleep and was awakened about thirty minutes later by someone knocking on her door and informing her of the fire.

3

After receiving a phone call telling him that his apartment was on fire, Griggs returned to his apartment and saw flames rolling along the ceiling. He testified that he saw a can of lighter fluid on the counter.

After the fire in the three-story apartment building was extinguished by firefighters, the body of Guerra was discovered in the bathtub of a third-floor apartment.

While out on patrol several days later, Hurst Police Officer Amber Hull ran the license plate of a car in front of her and discovered that the car had been reported as stolen. Hull was in North Richland Hills at the time, so she followed the car until a North Richland Hills police officer could respond. A North Richland Hills police vehicle gave chase to the car but terminated the chase. The car was later found abandoned in a subdivision. The police found Appellant and two women hiding in a nearby drainage ditch. At trial, the North Richland Hills officer who had chased the car identified Appellant as its driver.

A Haltom City police officer investigating the fire at the apartment complex obtained a search warrant for the stolen vehicle. From the vehicle, the officer recovered a small blow torch, a pistol equipped with a laser sight, a newspaper clipping about the fire, and a piece of paper with Griggs's prior address, his driver's license number, and his social security number.

In a videotaped statement to the police, Appellant admitted going to Griggs's apartment on the night of the fire "to whip [his] ass" and also that he had instructed a number of people to meet him in the apartment complex parking lot.

4

Appellant also admitted that one of his acquaintances kicked in the door to Griggs's apartment. Appellant stated that the apartment was empty, and he left. As he was leaving, Appellant saw brothers K.C. and Jaime Sifuentes in the street outside the complex. The brothers were among the people that Appellant had called to meet him at the apartment complex. Appellant stated that they had a gas container and wanted a ride, claiming that their car was out of gas. Appellant said that he told the brothers the purpose of his visit and that they told him something like, "Don't worry about it," "It'll get taken care of," and "We got it taken care of," but they did not say anything about starting a fire.

Alan LeMaster, who was also charged with arson for the fire, testified for the State at Appellant's trial. LeMaster testified that he and the Sifuentes brothers were at his godmother's apartment on the night of the fire. K.C. received a phone call from Appellant and went outside to talk. When K.C. came back inside, he told his brother that "it was time to go." The brothers invited LeMaster to go with them. K.C. said that they were going to collect some money owed to Appellant. They stopped at a gas station on the way; LeMaster testified that he went inside to use the restroom while the brothers "were supposedly getting gas for [their] car." Appellant called K.C., who told him that they were on their way.

LeMaster stated that when they arrived at the complex, the brothers went into Griggs's apartment and told LeMaster to wait at the top of the stairs. LeMaster went into the apartment at one point and saw K.C. holding a cup of

5

liquid in his hand and asking Jaime about a good spot. LeMaster did not smell gas fumes, lighter fluid, or anything of that sort. The brothers told LeMaster to go back to the stairs. About a minute later, the brothers ran out of the apartment, and all three ran back to the car. K.C. drove around the parking lot until flames could be seen coming out of the building. The brothers dropped LeMaster back off at his godmother's apartment, where K.C. made a telephone call and told someone that the brothers "did what [they] were supposed to and [that they would] be on [their] way to handle business." The brothers then left but returned about an hour later with some methamphetamine and some money.

LeMaster's godmother testified that LeMaster had told her that he had gone into the apartment with the brothers and had started a fire to take care of a problem for Appellant.

In the jury charge, the trial court charged the separate paragraphs of each of the three counts in the disjunctive. There was a separate verdict form for each count. The jury charge did not state that the jury had to be unanimous on any single theory of the alternative manners and means of committing the offense in each count.

The jury charge also contained special issues relating to a deadly weapon finding. The jury did not find that Appellant had exhibited a deadly weapon in the form of a combustible or flammable liquid or material or "carbon monoxide and/or smoke" or that he knew that such deadly weapon would be used.

6

The jury charge did not contain an accomplice witness instruction regarding LeMaster's testimony, and Appellant did not request such an instruction or object to the trial court's failure to include one.

## II. Sufficiency of the Evidence

Appellant argues in his seventh and eighth points that the evidence is factually insufficient to support his convictions for arson as a party and for felony murder as a party. The State argues that "[b]y attacking only the factual sufficiency of the evidence, Appellant has implicitly conceded that the evidence is factually sufficient. His seventh and eighth points of error should therefore be overruled."

After Appellant filed his brief, the Texas Court of Criminal Appeals held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard.[1] Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."[2] We therefore apply the *Jackson* standard to Appellant's seventh and eighth points.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the

---

[1]*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).

[2]*Id.*

7

prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3] The jury is the sole judge of the credibility of the evidence and the weight to be given to each piece of evidence.[4]

The sufficiency of the evidence in a criminal case is not determined by a no-evidence standard.[5] Instead, we must look at all the evidence to determine whether a rational jury could have found that the State proved every element of the offenses of arson and felony murder beyond a reasonable doubt.

As the Texas Court of Criminal Appeals has explained,

> [T]he law in Texas allows individuals to be charged as a party to an offense and to be held criminally responsible for the conduct of another when that individual acts in concert with another person in committing an offense. Circumstantial evidence alone may be used to prove that a person is a party to an offense.[6]

Appellant argues, and the record reflects, that he was not present when LeMaster or the Sifuentes brothers, or both LeMaster and the Sifuentes brothers, set the fire that destroyed Griggs's apartment and caused Guerra's death.

---

[3]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[4]*Brooks*, 323 S.W.3d at 899.

[5]*Butler v. State*, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000).

[6]*Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006).

Appellant also points out that the jury specifically found in Special Issues One and Two that he did not use or know that any type of accelerant would be used to start a fire.

Nevertheless, there was evidence from which the jury could conclude that Appellant had instructed LeMaster and the Sifuentes brothers to act as enforcers to punish Griggs for failing to pay Appellant what was owed. There was also evidence from which the jury could conclude that when Appellant left Griggs's apartment, he knew that the Sifuentes brothers would stay behind to inflict that punishment when the apartment was empty.

By not answering the deadly weapon special issue in the affirmative, the jury expressed its belief that Appellant did not anticipate that an accelerant would be used. Although there was evidence of a gas can, Griggs saw a can of lighter fluid, and a neighbor smelled lighter fluid. There was also evidence that one of the Sifuentes brothers called someone and reported that "[they had done] what [they] were supposed to." There was also evidence of a blow torch in the car that Appellant was seen driving immediately before his capture. We therefore conclude that the jury's verdict regarding the special issues was not necessarily inconsistent with a finding of guilt.

Applying the appropriate standard of review, we hold that, as Appellant phrased his seventh and eighth points, the evidence is sufficient to support Appellant's guilt as a party to both arson and felony murder. We overrule Appellant's seventh and eighth points.

9

## III.  Jury Selection

In his first, second, and third points, Appellant argues that the trial court reversibly erred by denying his challenges for cause to three members of the venire, numbers 13, 14, and 20.  Appellant properly preserved his complaints by striking the three veniremembers, requesting additional strikes, and showing that he was forced to accept at least three specific objectionable jurors.[7]

The indictment charges in both paragraphs of the first count that Appellant committed arson of a habitation within the limits of an incorporated city or town, "and/or knowing that the said habitation[] was located on property belonging to another, and death was suffered by Geovany Gustavo Guerra by reason of the commission of said arson."  The first count of the indictment, then, charges commission of first-degree arson.[8]

Both paragraphs of Count Three charge that Appellant intentionally or knowingly committed or attempted to commit an act clearly dangerous to human life, arson, that caused the death of Guerra and that Appellant was in the course of or immediate flight from the commission or attempted commission of a felony (arson in the first paragraph and burglary of a habitation in the second

---

[7]*See Loredo v. State*, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004).

[8]*See* Tex. Penal Code Ann. § 28.02(a)(2), (d) (West 2011).

10

paragraph). That is, Count Three of the indictment charges that Appellant committed felony murder of Guerra.[9]

During voir dire, defense counsel asked the venire, "If the facts justify it and the law allows it, could you—where you found somebody guilty beyond a reasonable doubt of arson where somebody had died, could you consider the minimal range of punishment?" Then he explained the possible minimum punishments of five or fifteen years.

Venireperson Number 14, Kelly Koreneck, stated,

> If we found whoever guilty beyond a reasonable doubt, why would we go for the minimum? That just seems like a slap on the wrist, if someone died. If someone has died, then you—someone needs to be held accountable for that and somebody should.
>
> . . . .
>
> [KORENEK]: So I would go to the maximum.
>
> [DEFENSE]: And—and you would always go to the maximum?
>
> [KORENEK]: If we found them guilty beyond a reasonable doubt, why would we go for the minimum?

The jurors indicated that death justified maximum punishment. But death of an individual was an essential element of two counts of the indictment. The jury would reach the issue of punishment only if they found the defendant guilty beyond a reasonable doubt, that is, only if they found all the elements, including

---

[9]*See id.* § 19.02(b)(3) (West 2011).

11

death, beyond a reasonable doubt.[10]  Had there been no death, Appellant would have been acquitted of the charged offenses.

Venireperson Number 12, Sasidara Manne said, in discussing the range of punishment and intoxication as mitigation of punishment,

> When a person's drunk beyond the limit— . . . —that means he's already guilty.  So whether it's involuntary or voluntary, it's not a question in my mind.  Drinking beyond the limit itself he is—he—he committed a big mistake.  Therefore, you know, he is treated like a normal person.  He should be punished to the maximum.
>
> [DEFENSE]:  To the maximum?
>
> [MANNE]:  Yes.
>
> [DEFENSE]:  You could never consider the minimum?
>
> [MANNE]:  No, sir.

Venireperson Number 13, Ms. Collins, volunteered that she agreed with the "people that are sitting here with me," immediately after Manne spoke. Defense counsel clarified that Collins was speaking of Manne when she referred to the people that were sitting there with her.

Venireperson Number 20, Benjamin Hatcher, firmly stated that he could not "go for the minimum punishment if someone died."  Hatcher was recalled and insisted that he could not consider the minimum punishment.  After the trial judge intervened, Hatcher finally said, "[T]he answer is yes, I can consider the minimum."  And then the trial court clarified,

---

[10]*See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (West Supp. 2010).

12

[COURT]: And the maximum?

[HATCHER]: Yes, and the maximum.

While the State is correct in stating that a juror who could not consider the full range of punishment under certain circumstances is not disqualified, the circumstance cannot be an essential element of the offense.[11] A juror must be able to consider the full range of punishment in a murder case[12] but is not disqualified if he or she could not consider the full range under certain circumstances,[13] for example, if torture was involved, or in a mercy killing, or if a child was killed. But here, the circumstance that precluded considering the full range of punishment was finding guilt beyond a reasonable doubt if there was a death; that is, conviction.

The State argues that Hatcher was a vacillating juror. He appears, rather, to be an acquiescing juror. But Korenek and Collins were neither vacillating nor confused. They were adamant.

The State relies on *Davis v. State* to argue that Appellant did not sufficiently instruct Korenek and Collins on the law that would govern them as jurors:

> To preserve error for a trial court's erroneous denial of a challenge for cause, appellant must show that: (1) he asserted a

---

[11]*See id.* art. 35.16(c)(2) (West 2006).

[12]*See id.*

[13]*Sadler v. State*, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998).

clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury. Appellant has properly preserved error with respect to each of the challenged venire members.

If a trial judge errs in overruling a challenge for cause against a venire member, then a defendant is harmed if he uses a peremptory strike to remove the venire member and thereafter suffers a detriment from the loss of the strike. Appellant was denied any additional peremptory strikes. To demonstrate harm, appellant must show that the trial court erroneously denied one challenge for cause.

When reviewing a trial court's decision to deny a challenge for cause, we look at the entire record to determine if there is sufficient evidence to support the ruling. The test is whether a bias or prejudice would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law. Before venire members may be excused for cause, the law must be explained to them, and they must be asked whether they can follow that law, regardless of their personal views. The proponent of a challenge for cause has the burden of establishing that the challenge is proper. The proponent does not meet this burden until he has shown that the venire member understood the requirements of the law and could not overcome his or her prejudice well enough to follow the law.

We review a trial court's ruling on a challenge for cause with considerable deference because the trial judge is in the best position to evaluate a venire member's demeanor and responses. A trial judge's ruling on a challenge for cause may be reversed only for a clear abuse of discretion. When a venire member's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision.[14]

---

[14]*Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010), *cert. denied*, No. 10-10063, 2011 WL 4530525 (Oct. 3, 2011) (citations omitted).

The trial court, not the lawyers, bears the obligation of instructing the jurors on the law.[15] *Davis* instructs us that the proponent of the challenge bears the burden not of instructing the jurors but of showing that the challenged "venire member understood the requirements of the law and could not overcome his or her prejudice well enough to follow the law."[16] The distinction is subtle, but it is significant. The attorneys do not bear the burden of instructing the venire on the law. The attorneys do bear the burden of providing a sufficient record showing that the venire has been instructed and understands the law. Presumably, if the trial court fails to provide adequate instruction, the lawyers may provide the missing information to the venire or may ask the trial court to do so. In either case, the record must reflect that the challenged veniremembers could not follow the law even though they had been adequately instructed in the requirements of the law.

The trial court thoroughly instructed the venire on the burden of proof and the meaning of beyond a reasonable doubt. The lawyers thoroughly discussed the obligations of jurors to consider the entire range of punishment. The lawyers dealt with at least one veniremember who had trouble understanding why the death penalty was not available. The veniremembers were told repeatedly what the range of punishment was and that they had to be able to consider the full

---

[15]*See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007).

[16]*See Davis*, 329 S.W.3d at 807.

range of punishment. They were repeatedly instructed that if the facts justified it and the law allowed it, they were required to be able to give full and fair consideration to the full range of punishment. Only then would they be qualified to serve as jurors. They were told that they had only to consider the entire range and that there was a difference between considering the entire range and assessing a particular punishment.

Members of the venire announced that they believed that Appellant was guilty because he had been arrested and that nothing could change their mind. Manne stated that the he could not be "a fair person to sit in that chair and make a decision as a juror" if there was "any doubt" that a person committed "a violence." He would require the defense to prove Appellant's innocence beyond a reasonable doubt if there was any allegation of violence.

The entire venire, as well as individual members of the venire in the presence of the entire venire, were repeatedly instructed that they had to follow the law, had to require the State to prove guilt beyond a reasonable doubt, could not presume guilt, and had to consider the entire range of punishment, be fair and impartial, and follow the law. They were instructed that the minimum punishment was five years but increased to fifteen years if the defendant had been previously convicted of a felony. They were told that the maximum punishment was life but that they had to be able to consider the entire range of punishment and base their decision on the law and the evidence.

16

The trial court did an excellent job of allowing a full and thorough voir dire of the venire. Veniremembers were also brought to the bench for individual voir dire, and the lawyers and the trial court ferreted out any confusion and answered questions and clarified any misunderstanding on the part of the veniremembers. The members of the venire were repeatedly instructed in the law and their obligations under the law.

The trial court assured that the requirements of *Davis* were fully met. Korenek and Collins clearly understood that in order to be qualified to serve as jurors, they had to fully and fairly consider the entire range of punishment.[17] They understood what that range of punishment was, both with and without proof of a prior felony conviction.[18] They understood that their punishment verdict would have to be based on the law and the evidence.[19] Still, both rejected any consideration of the minimum punishment.[20] We therefore hold that the trial court abused its discretion by denying the challenges to those two veniremembers, and we further hold that Appellant showed harm from the denial.

---

[17] *See Cardenas v. State*, 325 S.W.3d 179, 186–87 (Tex. Crim. App. 2010).

[18] *See id.*

[19] *See id.*

[20] *See id.*

We sustain Appellant's first and second points, which are dispositive, and do not reach the merits of his remaining points.[21]

## IV. Conclusion

Having sustained Appellant's dispositive jury selection points, we reverse the trial court's judgment and remand this case to the trial court for a new trial.


SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DAUPHINOT, J. filed a dissenting and concurring opinion.

PUBLISH

DELIVERED:  October 20, 2011

---

[21]*See* Tex. R. App. P. 47.1.


JOHNNY RAY WALLER                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

## DISSENTING AND CONCURRING OPINION ON REHEARING

----------

I would deny the State's motion for rehearing. Other than that, I am in complete agreement with the majority opinion. But because we are remanding this case, in the interest of judicial economy, I note with concern two issues raised below but not raised on appeal.

The trial court instructed the jurors that they must find Appellant guilty of arson if they found beyond a reasonable doubt that Appellant "entered into a conspiracy with Casimer Sifuentes or Jaime Sifuentes to commit the felony

offense of Aggravated Assault on James Griggs, or Burglary of a Habitation with intent to commit theft, or Burglary of a Habitation with the intent to commit assault" and in the attempt to carry out the agreement the Sifuentes brothers committed arson, causing Guerra's death, "and that such offense was committed in furtherance of the unlawful purpose to commit Burglary of a Habitation or Aggravated Assault, and was an offense that should have been anticipated as a result of the carrying out of the agreement," even "though [Appellant] may have had no intent to commit it." The trial court provided a similar instruction that the jurors must convict Appellant of murder if they found beyond a reasonable doubt that Appellant "entered into a conspiracy with Casimer Sifuentes or Jaime Sifuentes to commit the felony offense [of] Burglary of a Habitation" and that "in the attempt to carry out this agreement," the Sifuentes brothers committed burglary of a habitation and felony murder of Guerra and that "such offense was committed in furtherance of the unlawful purpose, and was an offense that should have been anticipated as a result of the carrying out of the agreement," even "though he may have had no intent to commit it."

Immediately following the section 7.02(a) penal code instruction, the trial court, combining language from subsections (a) and (b) of section 7.02, instructed the jury that

> [a] person is criminally responsible for an offense committed by the conduct of another if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was

2

committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy.[1]

The trial court then instructed the jury on the definition of conspiracy as set out in section 15.02 of the penal code:

> The term "conspiracy" means an agreement with one or more persons that they or one of [sic] more of them engage in conduct that would constitute a felony. An agreement constituting a conspiracy may be inferred from the acts of the parties. . . .
>
> . . . [I]t is no defense that the person for whose conduct the defendant is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type or class of offense, or is immune from prosec[u]tion.[2]

The trial court did not instruct the jury pursuant to section 15.02(d) that "[a]n offense under this section is one category lower than the most serious felony that is the object of the conspiracy, and if the most serious felony that is the object of the conspiracy is a state jail felony, the offense is a Class A misdemeanor."[3]

Essentially, in attempting to provide a section 7.02(b) instruction, the trial court actually instructed the jury that they could convict Appellant as a party to the more serious offense if the jury found Appellant guilty of section 15.02 conspiracy, an offense for which he was not indicted.

---

[1] Tex. Penal Code Ann. § 7.02(b) (West 2011).

[2] *Id.* § 15.02(a)–(c).

[3] *See id.* § 15.02(d).

3

It is well established that the offense of criminal conspiracy is a separate offense and is not a lesser included offense of the aim of the conspiracy,[4] nor is it the same as the law of parties.[5] In *Pereira v. United States*, defendants Pereira and Brading were charged with and convicted for violating the federal mail fraud statute and the National Stolen Property Act and conspiracy to commit those offenses.[6] The *Pereira* court held that the substantive offenses and conspiracy to commit the substantive offenses are separate offenses because each contains an element that the other does not.[7] Conspiracy requires the State to prove an agreement. Murder, as a principal or as a party, does not require the State to sustain the burden of proving an agreement. The instruction, contrary to the mandate of *Malik*,[8] both permits the jury to convict of an offense that is neither charged in the indictment nor a lesser included offense of that charged in the indictment and also increases the burden of the State beyond that prescribed by the indictment by requiring the State to prove an agreement.

In *Ex parte Brosky*, the State chose to prosecute Brosky for conspiracy to commit murder after a jury recommended that his sentence for murder as a party

---

[4]*Pereira v. United States*, 347 U.S. 1, 74 S. Ct. 358 (1954).

[5]*See Ex parte Brosky*, 863 S.W.2d 783, 784 (Tex. App.—Fort Worth 1993, no pet.) (*Brosky I*).

[6]*Pereira*, 347 U.S. at 3, 74 S. Ct. at 360.

[7]*Id.* at 11, 74 S. Ct. at 364.

[8]*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

4

be probated. Brosky argued that he could not be prosecuted for conspiracy to commit murder under section 15.02 of the penal code because it was essentially the same offense as murder as a party, or, at best, a lesser included offense of murder as a party. We held that Brosky could be prosecuted for both the substantive offense and conspiracy to commit the substantive offense because they were different offenses.[9] After the second trial, Brosky again raised the double jeopardy argument, arguing that he could not be convicted of murder as a party and of conspiracy to commit murder. Again, this court held that they were two separate offenses, not two ways to commit the same offense and not a greater and lesser included offense.[10] We relied on *United States v. Felix*, in which the United States Supreme Court recognized that a prosecution for conspiracy is not precluded by a prior prosecution for the substantive offense.[11]

If a trial court instructs jurors that they may convict a defendant of the substantive offense, whether they find him guilty of the substantive offense or of conspiracy to commit the substantive offense, the trial court instructs the jurors

---

[9]*Brosky I*, 863 S.W.2d at 784, 788.

[10]*Brosky v. State*, 915 S.W.2d 120, 140 (Tex. App.—Fort Worth, pet. ref'd) (*Brosky II*), *cert. denied*, 519 U.S. 1020 (1996).

[11]503 U.S. 378, 390–91, 112 S. Ct. 1377, 1385 (1992).

5

that they may convict of either the indicted offense or of an unindicted offense that is not a lesser included offense of the greater substantive offense.[12]

In *Woodard v. State*, the Texas Court of Criminal Appeals recently addressed the issue of whether a jury could be instructed to convict a defendant of conspiracy to commit the substantive offense when the defendant was not charged by indictment with conspiracy but only with the substantive offense.[13] The intermediate appellate court had reversed Woodard's conviction on this ground.[14] Woodard was indicted for murder, both intentional murder and murder as a consequence of doing an act clearly dangerous to human life. The jury was instructed to convict if they found Woodard guilty of conspiracy to commit either robbery or aggravated robbery. The intermediate appellate court held that our federal and state constitutions do not permit conviction of an offense not alleged in the indictment, such as robbery or conspiracy.[15]

---

[12]*See generally Pereira*, 347 U.S. 1, 74 S. Ct. 358; *see Brosky I*, 863 S.W.2d at 784 & n.4.

[13]322 S.W.3d 648, 649 (Tex. Crim. App. 2010) (*Woodard II*).

[14]*Woodard v. State,* 300 S.W.3d 404, 406 (Tex. App.—Houston [14th Dist.] 2009) (*Woodard I*), *rev'd*, 322 S.W.3d at 659.

[15]*Id.* at 407–09.

The Texas Court of Criminal Appeals reversed the appellate court and affirmed the conviction because Woodard had participated in preparation of the jury charge that contained the conspiracy instruction.[16] The court noted,

> [T]he federal constitutional rule that "a defendant cannot be held to answer a charge not contained in the indictment brought against him" is not based entirely "on the [due-process] right of the defendant to notice of the charge brought against him." This rule is also based on the Fifth Amendment's grand jury guarantee that no person "shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."
>
> Our constitution contains a similar guarantee. The right to a grand jury indictment under state law is a waivable right, which "must be implemented by the system unless expressly waived."[17]

In the case now before this court, however, trial counsel timely and specifically objected to the conspiracy instructions and pointed out that Appellant was not charged with the offense of conspiracy. The trial court overruled Appellant's objections and included the improper instructions.

Trial counsel also objected to the jury instructions that allowed the jury to convict Appellant both of arson causing Guerra's death and of felony murder causing Guerra's death in the course of arson. The trial court overruled his objections and allowed both convictions, raising the question of whether a person may be convicted of both arson resulting in death[18] and of felony murder,[19] with

---

[16]*Woodard II*, 322 S.W.3d at 659.

[17]*Id.* at 656–57 (citations omitted).

[18]Tex. Penal Code Ann. § 28.02(a)(2), (d) (West 2011).

7

arson being both the underlying felony and the act clearly dangerous to human life that caused the death.[20]

I agree wholeheartedly with the majority's determination of the merits of Appellant's issues. I write only to bring this entire matter to a more efficient final resolution.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: October 20, 2011

---

[19]*Id.* § 19.02(b)(3).

[20]*See, e.g.*, *Littrell v. State,* 271 S.W.3d 273, 279 (Tex. Crim. App. 2008); *Lawson v. State,* 64 S.W.3d 396, 397–401 (Tex. Crim. App. 2001) (Cochran, J., concurring).