Opinion issued October 13, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00425-CR

———————————

IsreAl Hudgins, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 182nd District Court

Harris County, Texas



Trial Court Case No. 1204840

 



 

MEMORANDUM OPINION

          A jury convicted appellant, Isreal
Hudgins, of murder and assessed punishment at 75 years’ confinement.[1]  In three issues, Hudgins contends that the application
portion of the trial court’s jury charge contains reversible error and that he
received ineffective assistance of counsel. 


We affirm the trial court’s
judgment.

Background

          The complainant, John Brown, was shot
and killed in his apartment in Houston, Texas. 
Police officers responding to the shooting found the complainant’s apartment
in a state of disarray, and, scattered throughout the apartment, they
discovered more than 150 grams of crack cocaine and $8,000 in cash.  Additional evidence was collected by police
at the apartment, including fingerprints, fired cartridge casings, and bullet
fragments.      

As a result of the police investigation into the
complainant’s death, Hudgins became a murder suspect and was taken into
custody.  He admitted in a recorded
statement that he and two accomplices, Irvin Williams and Darryl Pierre,
planned to rob the complainant.  In that
statement, Hudgins claimed that he drove Williams and Pierre to the complainant’s
apartment and remained in the car while, armed with guns, they committed the
robbery.  Hudgins heard three gunshots
before Williams and Pierre returned to the car, carrying an additional gun and
an unknown amount of cash.  They told
Hudgins they shot the complainant.  Hudgins
then drove Williams and Pierre away from the crime scene and received $800 in
payment.           

Hudgins’s indictment alleged that he murdered the complainant
by intentionally or knowingly causing the complainant’s death or by committing
an act clearly dangerous to human life with the intent to seriously injury the
complainant.  See Tex. Penal
Code Ann. § 19.02(b)(1),
(b)(2) (West 2011).  The indictment did not charge Hudgins
with any offense other than murder; it omitted any mention of the potential
offenses of aggravated robbery, felony murder, and capital murder.   

In voir dire and opening statements, the State presented its
theory of the case in a manner consistent with Hudgins’s own statement:  Hudgins planned the robbery of the
complainant with Williams and Pierre, he knew Williams and Pierre had guns, he
waited in the car while Williams and Pierre went into the complainant’s
apartment, he heard three gunshots, he was told by Williams and Pierre that
they had shot the complainant, and then he and the other men split the cash
taken from the complainant’s apartment.  At
trial, the State called numerous witnesses to establish Hudgins’s guilt.  Among the witnesses called by the State was Kenneth
Broussard, an inmate incarcerated with Hudgins and Williams.  Before trial, Broussard wrote the prosecutor
and offered information about an alleged jailhouse murder confession by Hudgins.  When called at trial, however, Broussard stated
that he did not want to testify and could not remember whether Hudgins actually
admitted to entering the apartment and killing the complainant or whether he
had fabricated such a conversation with Hudgins.  He eventually testified that he lied in his
correspondence with the prosecutor to curry favor in the defense of his own
unrelated robbery charge.  To impeach
Broussard, the State called David Worley, an investigator with the prosecutor’s
office who interviewed Broussard. 
Broussard told Worley that Hudgins admitted to having a plan to rob the
complainant and that Hudgins actually entered the complainant’s apartment and
shot him.  Several other police officers
and investigators also testified about the investigation giving rise to the
murder charges against Hudgins.  

At the close of evidence, the trial court and the parties
discussed the jury charge, which authorized the jury to convict Hudgins of
murder under any of these theories:  

(1) Hudgins intentionally or knowingly caused the
death of the complainant by shooting him with a firearm; 

 

(2) Williams and Pierre intentionally or knowingly
caused the death of the complainant and Hudgins, with the intent to promote or
aid the commission of the offense, solicited, encouraged, directed, aided, or
attempted to aid Williams and/or Pierre to commit the offense; 

 

(3)  Hudgins and
Williams and/or Pierre entered into an agreement to commit the felony offense
of aggravated robbery of the complainant, and, while in the course of
committing such aggravated robbery, Williams and/or Pierre intentionally or
knowingly caused the death of the complainant, and the murder was committed in
furtherance of the conspiracy and was an offense that Hudgins should have
anticipated as a result of carrying out the conspiracy;

 

(4)  Hudgins
intended to cause serious bodily injury to the complainant and did cause the
death of the complainant by intentionally or knowingly committing an act
clearly dangerous to human life; 

 

(5)  Williams
and/or Pierre intended to cause serious bodily injury to the complainant and
did cause the death of the complainant by intentionally or knowingly committing
an act clearly dangerous to human life, and Hudgins, with the intent to promote
or assist the commission of the offense, solicited, encouraged, directed, aided
or attempted to aid Williams and Pierre to commit the offense; or

 

(6)     Hudgins and Williams and/or Pierre entered
into an agreement to commit the felony offense of aggravated robbery of the
complainant, and, while in the course of committing such aggravated robbery,
Williams and/or Pierre intended to cause seriously bodily injury to the
complainant and did cause the death of the complainant by intentionally or
knowingly committing an act clearly dangerous to human life, and the murder was
committed in furtherance of the conspiracy and was an offense that Hudgins
should have anticipated as a result of carrying out the conspiracy.

 

Hudgins objected to the trial court’s jury charge on several
grounds.  His trial counsel objected that
language in the abstract portions of the charge concerning conspiracy would
“obfuscate the issues for the jury and in itself [would] also constitute a
comment on the weight of the evidence [and] allow the jury to convict [Hudgins]
on the theory of . . . conspiracy to commit murder” and that there was no
evidence that Hudgins was “guilty of any conspiracy to commit murder even
though it might be argued that ample evidence has been submitted to support the
charge of aggravated robbery.”  Trial
counsel also requested the omission of the application paragraphs and other
portions of the charge addressing a conspiracy between Hudgins, Williams, and
Pierre for the same reasons.  He further
objected that there was no evidence to support a submission inquiring whether
Hudgins had intentionally or knowingly caused the complainant’s death.  Finally, trial counsel requested a submission
on the lesser offense of aggravated robbery. 
His objections and requests, however, were overruled or denied.  

Jury Charge

In two issues, Hudgins contends that his conviction should be
reversed because the charge submitted to the jury violated his due process
rights by erroneously allowing the jury to find Hudgins guilty of murder based
on conduct not statutorily defined as murder or alleged in the indictment.  Specifically, in his first issue, Hudgins
argues that the trial court erred by instructing the jury, in the third
application paragraph, that it could find him guilty based on conduct amounting
to capital murder, rather than the charged offense of murder. In his second
issue, Hudgins argues that the trial court erred by authorizing the jury, in
the third and sixth application paragraphs, to convict him of the unindicted
offense of felony murder. 

The trial court’s charge must fully instruct the jury on the law
applicable to the case and apply that law to the facts adduced at trial.  See Tex. Code Crim. Proc. Ann. art. 36.14
(West 2007); see also Gray v. State,
152 S.W.3d 125, 127 (Tex. Crim. App. 2004). 
To determine whether the trial court’s charge contains reversible error,
we first decide whether error exists.  Middleton v. State, 125 S.W.3d 450, 453
(Tex. Crim. App. 2003).  If we conclude
that it does, we examine whether the error harmed the defendant.  Id.;
see Tex.
Code Crim. Proc. Ann. art. 36.19 (West 2006) (“Whenever it appears by the record in any criminal action upon
appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18
has been disregarded, the judgment shall not be reversed unless the error
appearing from the record was calculated to injure the rights of defendant, or
unless it appears from the record that the defendant has not had a fair and
impartial trial.”). 

I.       Capital Murder Submission 

Hudgins first argues that the trial court’s jury charge
contains reversible error because it instructed the jury that it could find him
guilty based on conduct amounting to capital murder, rather than the indicted
offense of murder.[2]  Hudgins asserts that this error deprived him
of his due process right to notice of the charges against him and the
opportunity to prepare a defense.  The
State responds that any error in the submission of a capital murder charge is
harmless because capital murder includes additional elements of proof that
murder does not, thereby increasing the State’s burden and benefitting Hudgins.   

Under the Texas Penal Code, one commits the offense of murder
if he: 

(1)            
intentionally or
knowingly causes the death of an individual;

 

(2)            
intends to cause
serious bodily injury and commits an act clearly dangerous to human life that
causes the death of an individual; or 

 

(3)            
commits or
attempts to commit a felony, other than manslaughter, and in the course of and
in furtherance of the commission or attempt, . . . he commits or attempts to
commit an act clearly dangerous to human life that causes the death of an
individual.

 

Tex. Penal Code Ann. § 19.02(b).  The
offense of murder is elevated to the offense of capital murder if the person
commits the murder, as defined by section 19.02(b)(1), in the course of
committing a felony (such as robbery).  See Tex.
Penal Code Ann. § 19.03(2) (West 2011).  
 

          Hudgins was charged with murder under
sections 19.02(b)(1) and (b)(2); as previously 
noted, the indictment made no mention of felony murder, capital murder,
aggravated robbery, or any other potential offenses.  At the conclusion of the case, the jury was
authorized by the trial court’s charge to convict Hudgins of murder under six
alternative theories.  The third
application paragraph instructed the jury: 


If you find from the
evidence beyond a reasonable doubt that the defendant, Isreal Hudgins, and
Irvin Williams and/or Darryl Pierre entered into an agreement to commit the
felony offense of aggravated robbery of [the complainant], and pursuant to that
agreement, if any, they did carry out their conspiracy and that in Harris
County, Texas, on or about the 9th day of March, 2008, while in the course of
committing such aggravated robbery of [the complainant], Irvin Williams and/or
Darryl Pierre intentionally or knowingly caused the death of [the complainant]
by shooting [him] with a deadly weapon, namely a firearm, and the murder of [the
complainant] was committed in the furtherance of the conspiracy and was an
offense that the defendant should have anticipated as a result of carrying out
the conspiracy.

 

Because
this paragraph authorized a guilty finding if the jury concluded the murder was
committed while in the course of an aggravated robbery, the State agrees that it
erroneously described the unindicted offense of capital murder.  See Tex Penal Code Ann. §19.03(2) (West
2011) (explaining that capital murder is murder as defined by section 19.01(b)(1)
and intentionally committed in the course of committing robbery); Howard v. State, 650 S.W.2d 460, 464
(Tex. App.—Houston [14th Dist.] 1982), aff’d,
667 S.W.2d 524 (Tex. Crim. App. 1984) (holding that “if
one intentionally or knowingly causes the death of
an individual in the course of committing or attempting to commit aggravated robbery, he
is guilty of capital murder just as if such killing
occurred while in the course of committing or attempting to commit robbery”); see also Montoya v. State, 810 S.W.2d 160, 164-65 (Tex. Crim. App. 1989) (discussing
similar language used in capital murder jury charge).  Assuming error per the State’s agreement, we
consider whether the
submission of an unindicted offense is reversible error.        

          Neither the United States Supreme
Court nor the Texas Court of Criminal Appeals has yet described the erroneous
submission of an unindicted offense as an error for which reversal is
automatic.  See United States v. Gonzalez-Lopez, 548 U.S. 140,
148–49, 126 S. Ct. 2557, 2564 (2006); see also Daniels v. State, 754 S.W.2d
214, 222 (Tex. Crim. App. 1988) (observing that jury-charge errors do not
result in automatic reversal).  Thus, we must review the trial court’s error
for harmlessness.  See Trejo v. State, 280 S.W.3d 258, 261 (Tex. Crim. App.
2009).  The standard for assessing harm
from jury-charge errors depends on whether the defendant objected to the charge
at trial.  Jimenez v. State, 32 S.W.3d 233, 237 (Tex. Crim. App. 2007).  Although Hudgins objected to the charge on various other grounds,
he failed to object that the charge included a capital murder submission.  When a defendant fails to make a proper objection to the submission
of an unindicted offense, we will reverse only if the error is fundamental or so
egregiously harmful that the defendant has not had a “fair and impartial
trial.”  Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984); see
Trejo, 280 S.W.3d at 261.  Errors that result in egregious harm are those that affect the very basis of
the case, deprive the defendant of a valuable right, vitally affect a defensive
theory, or make the case for conviction or punishment clearly and significantly
more persuasive.  Almanza, 686 S.W.2d at 171.  Under an egregious harm analysis, we examine “the entire jury charge, the
state of the evidence, including the contested issues and weight of the
probative evidence, the arguments of counsel, and any other relevant
information revealed by the record of the trial as a whole.”  Warner
v. State, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).  

Applying the above standard to this case, we conclude that
no egregious harm accrued to Hudgins as a result of the error in the jury charge.  The charge first explained that Hudgins was
charged with murder and then went on to give the abstract law regarding the
offense of murder in accordance with sections 19.02(b)(1) and 19.02(b)(2) of
the Penal Code.  See Tex. Penal Code Ann.
§ 19.02(b)(1) (defining murder as “intentionally or knowingly caus[ing] the
death of an individual”), (b)(2) (defining murder as “intend[ing] to cause
serious bodily injury and intentionally or knowingly committing an act clearly
dangerous to human life that cause[d] the death of an individual”).  But, consistent with a charge for capital
murder, the third application paragraph erroneously instructs the jury that it
can only find Hudgins guilty of murder if it finds that the murder was
committed while in the course of committing an aggravated robbery.  The charge thus required the State to prove
not only all of the elements of murder as alleged in the indictment, but also additional
elements establishing the commission of an aggravated robbery.  This error increased the State’s burden; it
did not relieve the State of proving any element of the indicted offense of
murder.  A jury charge error that
increases the State’s burden by requiring the State to prove additional
elements does not egregiously harm Hudgins; it benefits him.  See
Watson v. State, 693 S.W.2d 938, 941-42 (Tex. Crim. App. 1985).  

The record also does not demonstrate that Hudgins was
deprived of notice of the charges against him or was inadequately prepared to
defend against the State’s factual theory that he, Williams, and Pierre planned
to rob the complainant and that the murder of the complainant occurred during
that aggravated robbery.  The record
reflects that Hudgins knew that such would be the State’s theory; that theory,
after all, was consistent with his own recorded account of the events giving
rise to the complainant’s death.  Most
importantly, however, the jury did not actually convict Hudgins of capital
murder, making this case distinct from those acknowledging fundamental error in
the submission of an unindicted offense. See,
e.g., Woodard v. State, 322 S.W.3d 648, 658-59 (Tex. Crim. App. 2010) (noting that
unobjected-to and unwaived submission of unindicted offense in jury charge
followed by conviction of that offense meets egregious harm standard); Almanza, 686 S.W.2d at 173 (noting that “due
process would be violated per se by
convicting a person for murder when he had been indicted for a totally
different offense such as robbery”).  The
jury returned a verdict that Hudgins was guilty of murder, not capital murder,
and the trial court rendered judgment in accordance with the jury’s verdict.  

Accordingly, we overrule Hudgins’s first issue.     

II.      Felony Murder Submission

          Hudgins next argues that he was
denied due process of law because the third and sixth application paragraphs erroneously
authorized the jury to find him guilty of a conspiracy to commit felony murder
even though felony murder was not alleged in the indictment.  We disagree. 


The third and sixth application paragraphs, respectively,
authorized a conviction if the jury found:

Hudgins and Williams and/or Pierre entered into an
agreement to commit the felony offense of aggravated robbery of [the
complainant], and pursuant to that agreement, . . . they did carry out their
conspiracy and . . . Irvin Williams and/or Pierre intentionally or knowingly
caused the death of [the complainant] by shooting [him] with a deadly weapon,
namely a firearm, and the murder of [the complainant] was committed in
furtherance of the conspiracy and was an offense that [Hudgins] should have
anticipated as a result of carrying out the conspiracy; or 

 

…

 

Hudgins and Williams and/or Pierre entered into an
agreement to commit the felony offense of aggravated robbery of [the
complainant], and pursuant to that agreement, . . . they did carry out their
conspiracy and . . . Irvin Williams and/or Pierre intended to cause serious
bodily injury to [the complainant], and did cause the death of [the
complainant] by intentionally or knowingly committing an act clearly dangerous
to human life, namely, by shooting [him] with a deadly weapon, namely a
firearm, and the murder of [the complainant] was committed in furtherance of
the conspiracy and was an offense that the defendant should have anticipated as
a result of carrying out the conspiracy. . . .

 

Neither
of these paragraphs instructed the jury to consider whether Hudgins was guilty
of the unindicted offense of felony murder as defined by the Penal Code.  See Tex. Penal
Code Ann. §19.02(b)(3)
(providing that person commits felony murder if he “commits or attempts to
commit a felony, other than manslaughter, and in the course of and in
furtherance of the commission or attempt, or in immediate flight from the
commission or attempt, he commits or attempts to commit an act clearly
dangerous to human life that causes the death of an individual”).  Rather, these paragraphs combined underlying
theories of murder with an alternative “party liability” charge under section
7.02(b) of the Penal Code.  See Tex.
Penal Code Ann. §7.02(b) (West 2011). 
Party liability contemplates that conspirators to a felony are
criminally responsible for felonies committed by other conspirators in
furtherance of the conspiracy if the other felonies should have been
anticipated.  See id.; see also Woodard,
322 S.W.3d at 649.  The language used in
the third and sixth application paragraphs tracks the language used in section
7.02(b) providing that:  

If, in the attempt to carry out a conspiracy to commit
one felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
the carrying out of the conspiracy.

 

Tex. Penal Code Ann. §7.02(b). 
“It is well accepted that the law of parties may be applied to a case
even though no such allegation is contained in the indictment.”  Montoya,
810 S.W.2d at 165; see Marble v. State,
85 S.W.3d 287, 287 (Tex. Crim. App. 2002). 
  

          Accordingly, we overrule Hudgins’s
second issue.

Ineffective
Assistance of Counsel

          In his third issue, Hudgins argues
that his trial counsel was ineffective because he failed to request that the trial
court instruct the jury that evidence presented by the State to impeach
Broussard was not substantive evidence of guilt.  

To
establish ineffective assistance of counsel, Hudgins must show, by a
preponderance of the evidence, (1) that his counsel’s representation fell below
the objective standard of reasonableness under prevailing professional norms,
and (2) a reasonable probability that, but for his counsel’s deficient
representation, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984); Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002).  Appellate review of counsel’s
representation is highly deferential; we presume counsel’s decisions fell
within the wide range of reasonable and professional assistance. Bone, 77 S.W.3d at 833; Mallet v. State, 65 S.W.3d
59, 63 (Tex. Crim. App. 2001); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  To rebut the
presumption of reasonable assistance, allegations of ineffectiveness must be
firmly founded in the record. Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999). The record is best developed by collateral attack, such
as a motion for new trial.  Jackson v. State, 973 S.W.2d 954, 957
(Tex. Crim. App. 1998).  An appellate court may not reverse a
conviction for ineffective assistance of counsel when counsel’s acts or
omissions may have been based on sound trial strategy and the record contains
no specific explanation for counsel’s decisions.  Bone, 77 S.W.3d at 830.

 The record does not
reflect a specific reason why Hudgins’s counsel did not request a limiting
instruction during the State’s presentation of impeachment evidence.  According to Hudgins, we should conclude that
this failure was an oversight, and not strategic, because counsel noted during
the charge conference that neither Broussard’s testimony nor the State’s
impeachment evidence was evidence of guilt. 
But, Hudgins did not file a motion for new trial alleging ineffective
assistance of counsel, so no evidence explaining counsel’s trial strategy was
developed.  Cf. Ex Parte Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (concluding
that counsel’s performance was deficient based on post-conviction affidavit
from counsel clarifying that challenged omission was not result of trial
strategy).  Courts have recognized as reasonable
strategy the decision not to request a limiting instruction in order to avoid
reminding the jury of incriminating evidence. 
See, e.g., Garcia v. State, 887 S.W.2d 862, 881
(Tex. Crim. App. 1994); Beheler v. State,
3 S.W.3d 182, 186 (Tex. App.—Fort Worth 1999, no pet.).  Absent record evidence regarding counsel’s
strategy, we cannot speculate as to whether a valid strategy existed, and thus Hudgins
cannot rebut the strong presumption of reasonable assistance. 

Accordingly, we overrule Hudgins’s third issue.

Conclusion

          We
hold that there is no reversible error in the trial court’s jury charge.  We also hold that Hudgins was not denied
effective assistance of counsel.  We
affirm the judgment of the trial court.

 

 

                                                                  


Harvey
Brown

Justice


 

Panel consists of Justices Jennings, Sharp, and Brown.

 

Do not publish.  Tex. R. App. P. 47.2(b).

 

           











[1]           See Tex. Penal Code Ann. §19.02(b) (West 2011).





[2]
          Although the trial court’s error
in submitting a capital murder submission is challenged as a part of his first
issue presented, Hudgins does not discuss this issue first in the argument
section of his brief.  We follow the
order listed in his issues presented, and address the capital murder submission
first.