PD-0117-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/29/2015 4:30:05 PM
Accepted 2/4/2015 9:42:38 AM
ABEL ACOSTA
CLERK

No. 06-13-00046-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

CLISTER RAY THOMAS,                                           Appellant

v.

THE STATE OF TEXAS,                                          Appellee

Appeal from Gregg County

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

FILED IN
COURT OF CRIMINAL APPEALS

February 4, 2015

ABEL ACOSTA, CLERK

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

JOHN R. MESSINGER
Assistant State Prosecuting Attorney
Bar I.D. No. 24053705

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

# NAMES OF ALL PARTIES TO THE TRIAL COURT'S JUDGMENT

*The parties to the trial court's judgment are the State of Texas and Appellant, Clister Ray Thomas.

*The case was tried before the Honorable Vincent L. Dulweber, County Court at Law No. 2, Gregg County.

*Counsel for Appellant at trial was David Ingram, P.O. Box 562, Longview, Texas 75606.

*Counsel for Appellant before the Court of Appeals was Tim Cone, P.O. Box 413, Gilmer, Texas 75644.

*Counsel for the State at trial was Pamela Ikechi Egornu Ibeh and John Jerald Roberts, Gregg County Assistant District Attorneys, 101 East Methvin Street, Suite 333, Longview, Texas 75601.

*Counsel for the State on appeal was Zan Colson Brown, Gregg County Assistant District Attorney, 101 East Methvin Street, Suite 333, Longview, Texas 75601.

*Counsel for the State before this Court is John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **1)**     **Is a defendant who relies on an "all or nothing" strategy actually harmed by submission of the wrong statutory manner and means?**

    **2)**     **Should *Almanza*'s fundamental error analysis be abandoned in favor of review for ineffective assistance of counsel?**

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

APPENDIX  (Opinion of the Court of Appeals)

# INDEX OF AUTHORITIES

**Cases**

*Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . 4

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (reh'g).. . . . . . . 4, 11, 13

*Arrington v. State*, __ S.W.3d__, 2015 Tex. Crim. App. LEXIS 15 (Tex. Crim. App. Jan. 14, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 14

*Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . 13

*Bluitt v. State*, 137 S.W.3d 51 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . . . . 12

*Cole v. Arkansas*, 333 U.S. 196 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cosio v. State*, 353 S.W.3d 766 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . 8, 10

*United States v. Cronic*, 466 U.S. 648 (1984).. . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Delgado v. State*, 235 S.W.3d 244 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . 13

*Gelinas v. State*, 398 S.W.3d 703 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . 12

*Jimenez v. State*, 32 S.W.3d 233 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . 14

*Jourdan v. State*, 428 S.W.3d 86 (Tex. Crim. App. 2014). . . . . . . . . . . . . . . 8-9, 10

*Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993).. . . . . . . . . . . . . . . . . . 11

*Martin v. State*, 200 S.W.3d 635 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . . . 9

*Posey v. State*, 966 S.W.2d 57 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . 13

*Saldano v. State*, 70 S.W.3d 873 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . 11, 12

*Strickland v. Washington*, 466 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . 12, 13

*Taylor v. State*, 332 S.W.3d 483 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . 9

*Thomas v. State*, 444 S.W.3d 4 (Tex. Crim. App. 2014) . . . . . . . . . . . . . . . 2, 3, 4, 8

*Thomas v. State*, __S.W.3d__, 2014 Tex. App. LEXIS 13840 (Tex. App.–Texarkana Dec. 30, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Thomas v. State*, 411 S.W.3d 685 (Tex. App.–Texarkana 2013). . . . . . . . . . . . . . . 2

*Williamson v. State*, 167 S.W. 360 (Tex. Crim. App. 1914).. . . . . . . . . . . . . . . . 11

*Woodard v. State*, 322 S.W.3d 648 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . 10

*Wooley v. State*, 273 S.W.3d 260 (Tex. Crim. App. 2008).. . . . . . . . . . . . . . . . . 3

*Young v. State*, 991 S.W.2d 835 (Tex. Crim. App. 1999).. . . . . . . . . . . . . . . . . 14

**Rules**
TEX. CODE CRIM. PROC. art. 36.19. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. CODE CRIM. PROC. art. 62.055(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

No. 06-13-00046-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

CLISTER RAY THOMAS,                                              Appellant

v.

THE STATE OF TEXAS,                                              Appellee

\* \* \* \* \*

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its State Prosecuting Attorney, and respectfully urges this Court to grant discretionary review of the above named cause, pursuant to the rules of appellate procedure.

**STATEMENT REGARDING ORAL ARGUMENT**

The State requests oral argument. Based on this Court's previous disposition of this case and the jury charge error involved, discussion will prove helpful. Discussion of the second ground for review will also likely be necessary to assure both the bench and bar that overruling *Almanza* actually requires little change in substantive law.

1

## STATEMENT OF THE CASE

Appellant was convicted of failure to register a change of address as part of his duty as a registered sex offender. The court of appeals reversed, holding that the submission of only a manner and means not alleged in the indictment caused egregious harm.

## STATEMENT OF PROCEDURAL HISTORY

On August 28, 2013, the court of appeals reversed appellant's conviction for insufficient evidence.[1] This Court reversed and remanded for consideration of charge error.[2] On remand, the court of appeals reversed appellant's conviction in a published opinion on December 30, 2014.[3] No motion for rehearing was filed.

## GROUNDS FOR REVIEW

1)  **Is a defendant who relies on an "all or nothing" strategy actually harmed by submission of the wrong statutory manner and means?**

2)  **Should *Almanza*'s fundamental error analysis be abandoned in favor of review for ineffective assistance of counsel?**

---

[1]  *Thomas v. State*, 411 S.W.3d 685 (Tex. App.–Texarkana 2013).

[2]  *Thomas v. State*, 444 S.W.3d 4 (Tex. Crim. App. 2014).

[3]  *Thomas v. State*, __ S.W.3d __, 2014 Tex. App. LEXIS 13840 (Tex. App.–Texarkana Dec. 30, 2014).

## ARGUMENT AND AUTHORITIES

Appellant is a registered sex offender. He must notify authorities at least seven days before an intended move and within seven days afterwards.[4] He admitted never reporting a change of address because he denied moving. Is it "nothing short of the rankest speculation,"[5] to conclude that the jury that found him guilty of one notification duty would convict him of the other?

Appellant was indicted for failing to notify authorities before he moved. Unfortunately, the application portion of the jury charge and much of the State's closing argument focused on a violation of his duty to notify authorities within seven days *after* moving. This Court found that the State met its burden of proof under the hypothetically correct jury charge but noted the charge error and remanded for consideration of harm.[6] The court of appeals found egregious harm and reversed:

---

[4] *See* TEX. CODE CRIM. PROC. art. 62.055(a) ("If a person required to register under this chapter intends to change address, . . . the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority . . . and provide the authority and the officer with the person's anticipated move date and new address. If a person required to register changes address, the person shall, not later than the later of the seventh day after changing the address . . . report in person to the local law enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identity and proof of residence.").

[5] Slip op. at 9.

[6] *Thomas*, 444 S.W.3d at 11 (citing *Wooley v. State*, 273 S.W.3d 260, 271-72 (Tex. Crim. App. 2008)). Appellant only challenged the sufficiency of the evidence in his appeal; he never raised either a complaint under *Almanza* or a due process complaint based in *Wooley* or the cases upon which *Wooley* relied. With regard to the latter, however, this Court has held,

The . . . rule applies only when a defendant is convicted on a charge that was neither alleged in an indictment nor presented to the jury, as the defendant is then not given sufficient notice as to the specific charge. "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made."

3

Considering the jury charge in its entirety, the state of the evidence, and the arguments of counsel, we find that the erroneous jury charge denied Thomas the valuable right to have the jury decide his guilt on the proper basis and authorized a conviction for actions not alleged in the indictment. Thus, Thomas was denied a fair and impartial trial.[7]

The jury accepted appellant's testimony that he never amended his registered address. Had the jury also believed him when he said he had not moved, there would have been no duty to notify and so no conviction. Far from being "the rankest speculation," the conclusion that appellant would have been convicted of failing to report a change of address under any theory alleged is almost unavoidable. The court's error has two causes. First, the court's view of the record is jaundiced. Second, it fails to appreciate the role defensive strategy plays in an *Almanza* analysis.

The record as a whole

The court of appeals's view of the record is best summarized by its embrace of Judge Cochran's dissent to this Court's opinion: "Everyone at trial—the judge, the prosecutor, the defense attorney, the jury—was focused solely upon the 'afterwards' change-of-address offense, the offense that appellant actually did commit but was not charged with."[8] Respectfully, this is not so.

---

*Adames v. State*, 353 S.W.3d 854, 859-60 (Tex. Crim. App. 2011) (quoting *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)). As this is not the case here, it is perhaps understandable that the court of appeals reviewed harm exclusively under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).

[7] Slip op. at 9.

[8] Slip op. at 9 (quoting *Thomas*, 444 S.W.3d at 14 (Cochran, J., dissenting)); *see also* slip op. at 7 ("The state of the evidence and argument of counsel exacerbate[d]" the errors in the charge).

4

The State's direct examinations focused on the offense alleged and proving that appellant never resided at his registered address. Detective Kevin Brownlee, who helped manage the registered sex offenders in Longview, emphasized the duty to notify authorities "a minimum of seven days prior to moving[,]" and the discretion he uses to work with registrants who have to move unexpectedly.[9] "[O]f all of the rules that they're required to comply with, the notifying of seven days prior to changing addresses is probably the biggest one."[10] Appellant's failure? "He moved from his location without notifying us at least seven days prior to moving."[11] The property manager of the apartment appellant claimed as his residence lived and worked on site but she never saw appellant there; none of her staff ever reported seeing him there, either.[12] The officer who issued the criminal trespass warning at the property manager's behest explained he would not have done so if it appeared that appellant lived there.[13]

The State's cross-examination of appellant's witnesses was of a piece with its direct examination. Ashanti Jimerson, the renter of the apartment, said that appellant

---

[9]    3 RR 27-30.

[10]    3 RR 46.

[11]    3 RR 34.

[12]    3 RR 53-54.

[13]    3 RR 61-62.

goes there "off and on" to see Jimerson's mother, Pamela Espy.[14]  In response to re-direct, Jimerson said, "He would come when my mom c[a]me, so I don't know if you call that living."[15]  Espy had a permanent address where she resided with appellant,[16] and confirmed that appellant only stayed at Jimerson's apartment the two or three nights a week that she did.[17]

Appellant admitted he never reported any change of address but denied violating his duty to register.[18]  He claimed that he lived at Jimerson's apartment "every day" and that he was trespassing doing so; he lied to police about other addresses so that they would not get kicked out for having a registered sex offender there.[19]  The State questioned his inability to remember Jimerson's address despite knowing the addresses of other residences and places of work.[20]

On rebuttal, Detective Brownlee reiterated that the duty at issue was registering a change of address seven days prior to moving, and had a brief exchange with defense counsel on the logistics of proving to authorities a move that has not yet

---

[14]  3 RR 89-91.

[15]  3 RR 93.

[16]  3 RR 84-85.

[17]  3 RR 83-84, 86-87 ("He would come over there just when I'm there.").

[18]  3 RR 101, 104.

[19]  3 RR 101-02, 104, 116.

[20]  3 RR 116-18.

6

happened.[21] Brownlee was the last witness to testify.

Despite the State's trial focus on the failure to notify before moving and appellant not ever living at his registered address, the abstract and application portions of the charge inexplicably included only failure to notify after moving.[22] And, while the State's argument did indirectly refer to Brownlee's testimony,[23] it repeatedly recited the elements as set out in the erroneous application paragraph. But it also reiterated its theory that appellant never resided at Jimerson's apartment:

> [Y]ou do not CT[24] someone from their own residence. Officers made a determination he does not reside there. If he did, he would contest the CT warning. You cannot CT someone from their residence. He wasn't living there.
> . . .
> [A]ll the witnesses on here said things that can only lead to one conclusion, that this defendant didn't reside on Green Street. It's the only way.
> . . .
> [W]e're not basing our argument on the CT warning because he could break that law. We're saying he was not there to begin with.
> . . .
> He wasn't on Green Street, he's not there now.
> . . .
> He didn't know the address on Green Street, still couldn't tell it if I asked him again because he didn't live there.[25]

So when the court of appeals says, "Throughout the trial, the State likewise

---

[21]  3 RR 125.

[22]  1 CR 24-25. There was a section immediately preceding entitled "Accusation," in which the relevant portion of the indictment appears verbatim. 1 CR 24. Additionally, the verdict form reflects that the jury found appellant guilty "as charged in the indictment." 1 CR 28.

[23]  3 RR 161.

[24]  "CT" is a common term for issuing a criminal trespass warning.

[25]  3 RR 160, 165, 167, 168-70.

7

focused precisely on the offense as explained in the jury charge[,]"[26] it is wrong on two counts. As illustrated above, the State focused on the correct manner and means throughout trial until closing arguments. Moreover, appellant never focused on either duty until closing argument because, as recognized by this Court and the court of appeals, his defense was that he had no duty because he had not moved.[27]

Strategic choices

Appellant's defense is by far the most important consideration. This Court has repeatedly held that a defendant's "all or nothing" strategy may render charge error harmless despite anything else in the record ameliorating any harm.

In *Cosio v. State*, although the jury was told which types of conduct went with each count of a sexual offense, the jury was not required to be unanimous as to which incidence of each type of conduct occurred.[28] This Court made short work of the harm analysis. "Cosio's defense was that he did not commit any of the offenses . . . . The jury was not persuaded . . . . Had the jury believed otherwise, they would have acquitted Cosio on all counts. . . . It is thus highly likely that the jury's verdicts . . . were, in fact, unanimous."[29] In *Jourdan v. State*, the charge did not expressly require

---

[26] Slip op. at 8.

[27] *Thomas*, 444 S.W.3d at 6-7; Slip op. at 7-8.

[28] 353 S.W.3d 766, 774 (Tex. Crim. App. 2011).

[29] *Id*. at 777-78.

jury unanimity with respect to digital penetration versus penile contact.[30] Because Jourdan's "primary defensive posture, as evidenced by his own testimony, was that no sexual assault took place" and the jury "obviously rejected his version of the event[,]" "any error in the jury charge in failing to require such agreement did not serve to undermine the particular defense he chose to pursue."[31] In *Arrington v. State*, another unanimity case, the jury was "confronted with two diametrical positions" and this Court found no actual harm.[32] "The jury in this case, after hearing all the evidence, clearly credited H.A.'s story and did not believe appellant's categorical denial of all accusations. Had it believed appellant rather than H.A., it would have acquitted him of all charges."[33]

The emphasis on defense strategy is not limited to unanimity cases,[34] and

---

[30] 428 S.W.3d 86, 99 (Tex. Crim. App. 2014).

[31] *Id*. at 98.

[32] __ S.W.3d__, 2015 Tex. Crim. App. LEXIS 15 at *1, 31 (Tex. Crim. App. Jan. 14, 2015).

[33] *Id*. at *27.

[34] *See*, *e.g.*, *Taylor v. State*, 332 S.W.3d 483, 493 (Tex. Crim. App. 2011) ("The defensive theory was that no sexual abuse occurred at any time. It is unlikely that the jury believed that Appellant sexually assaulted the victim before he turned 17 years old but not after. In this case, the jury either believed Appellant or believed the victim."); *Martin v. State*, 200 S.W.3d 635, 642 (Tex. Crim. App. 2006) (although jury must pass on the existence of jurisdictional prior DWI convictions, defendant's stipulation to such took them "out of contention" and so he was not egregiously harmed by their absence in the charge). It is also the central issue in a submitted case currently pending before this Court, *Villarreal v. State*, PD-0332-13 (submitted September 18, 2013) ("If the [self-defense presumption] instructions were required to be given sua sponte, did the court of appeals err by not considering the arguments of counsel and record as a whole in conducting its *Almanza* harm analysis?").

applies regardless of whether anything in the record tends to reduce or add to harm.[35]

In short, it is the "analytical meaning" of the verdict in light of the evidence and defense that determines harm.[36] The "analytical meaning" of the jury verdict in this case is that the jury would have convicted him on either manner and means based on its rejection of his defense. Appellant's "all or nothing" strategy was equally applicable to both, and the result is that no actual harm can be shown.

A better way

As shown above, this Court regularly grants review of *Almanza* decisions and often decides them on the strategy employed at trial. The need for this Court to repeatedly clarify what "the law applicable to the case" means, or to simply correct a lower court's erroneous harm analysis, indicates that neither the charges themselves nor the lower courts' application of *Almanza* have improved since it was decided.[37] The problem presented in this case illustrates *Almanza*'s central problem: it was made unnecessary by the doctrine of ineffective assistance of counsel (IAC) before this

---

[35] *See Cosio*, 353 S.W.3d at 777 (nothing in the charge or from the judge or parties addressed the error); *Jourdan*, 428 S.W.3d at 92, 98 (State's emphatic advocacy for non-unanimity "is obviously an important consideration in any analysis of egregious harm *vel non*, but it is not the only consideration."); *Arrington*, 2015 Tex. Crim. App. LEXIS 15 at *19, 27-28 (nothing in the charge or arguments of counsel informed the jury of the proper unanimity requirement).

[36] *Arrington*, 2015 Tex. Crim. App. LEXIS 15 at *31; *See, e.g., Jourdan*, 428 S.W.3d at 99 ("Any juror who voted to convict the appellant on the facts of this case under the theory that he penetrated her vagina with his finger must, at a minimum, have agreed that the appellant also contacted Kemp's sexual organ with his penis.").

[37] *See Woodard v. State*, 322 S.W.3d 648, 661 (Tex. Crim. App. 2010) (Cochran, J., concurring) ("Unfortunately, times have not changed much since 1984, nor have mistakes in jury instructions diminished significantly.").

10

Court even fleshed it out. Perhaps it is time to reconsider this body of law.

*Almanza* was premised on the idea that article 36.19 implicitly provides for review of unobjected-to fundamental error notwithstanding the fact that it plainly states, "All objections to the charge . . . shall be made at the time of trial."[38] Assuming that the statute is "inherently ambiguous,"[39] and that resorting to legislative history and this Court's interpretation of its predecessor supports the holding,[40] this Court has shifted dramatically from the amorphous concept of fundamental error to *Marin*'s categorical approach to preservation.[41] This was necessary, in part, because fundamental error jurisprudence "simply cannot be explained by reference to any unifying principle or principles."[42] It is also unfair to the opposing party and the trial court, and serves to reduce, rather than improve, the criminal justice system. When a party is excused from even attempting to correct errors at trial, the results are an

---

[38] TEX. CODE CRIM. PROC. art. 36.19.

[39] *Almanza*, 686 S.W.2d at 166.

[40] *But see, e.g., Williamson v. State*, 167 S.W. 360, 362-63 (Tex. Crim. App. 1914) (emphasis added): With [this Court's decisions on the former law] before them the Legislature deliberately, in amending the article, struck out the words "or in motion for new trial" and required that all errors in the charge be objected to at the time of the trial and before the charge is read to the jury, requiring that the court submit his charge to counsel for that purpose. And the question is, are we authorized to ignore this *plain* statutory provision of our law . . . ? We do not think so. . . . Because the error in the charge is not in any manner complained of until after verdict, we can not consider it under the present law[.]

[41] *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) ("Thus, our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request.").

[42] *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002).

11

unlawful trial and a judicial system burdened by appeal and retrial.[43]  Allowing the

option on appeal to rescue an attorney who might not even read the charge before

stating "no objection"[44] creates a perverse incentive to lie behind the log rather to

ensure a fair trial the first time around.  The rationale stated in *Gelinas v. State* is

applicable to fundamental error generally and *Almanza* specifically:

> A defendant may now remain silent where a jury charge is incorrect, hoping for
> an acquittal, and then, if a jury finds him guilty, raise the issue on appeal with
> the hope of obtaining a new trial.  The State, however, has no such opportunity
> given its limited right of appeal.  Not only is the result unfair, but it also
> encourages defendants to remain silent with regard to errors in jury instructions
> and rewards the failure to correct charge errors.  Both fairness and judicial
> economy favor doing away with such a holding.[45]

Beyond the resurgent requirement for preservation (or a categorical exception

based on the specific right involved), IAC does everything *Almanza* is needed to do,

and does it better.  *Strickland* and *Cronic*, the seminal cases on IAC, were decided in

the year between *Almanza*'s first opinion and the opinion on rehearing.[46]  Since that

time, it has become clear that "the doctrine of ineffective assistance of counsel

obviates the need to use a doctrine of fundamental error as a means to correct cases

---

[43]    *Id*.

[44]    *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (a blanket "no objection" does not waive error or prevent review for egregious harm).

[45]    398 S.W.3d 703, 708 (Tex. Crim. App. 2013).

[46]    *United States v. Cronic*, 466 U.S. 648 (1984); *Strickland v. Washington*, 466 U.S. 668 (1984).

12

in which an accused was deprived of a fair trial."[47] This is especially true with unpreserved charge error.

To begin, the need for either analysis arises only because defense counsel failed to object. Second, the focus of both is the fairness of the proceeding and confidence in the reliability of its outcome.[48] As a result, their harm/prejudice analyses are difficult to distinguish.[49] Given the severity of an error that goes to the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory,[50] one should expect reasonably proficient counsel to recognize it and prevent its inherent prejudice. Third, in practice, a large segment of *Almanza*'s jurisprudence mirrors review of ineffective assistance claims. Just as appellate courts will not find IAC when counsel's performance can be explained by some reasonable strategy, this Court refuses to apply *Almanza* whenever strategy is implicated.[51]

---

[47] *Blue v. State*, 41 S.W.3d 129, 144 (Tex. Crim. App. 2000) (Keller, J., dissenting).

[48] *Almanza* defined fundamental error as error "calculated to injure the rights of the appellant to the extent that he has not had a fair and impartial trial." 686 S.W.2d at 172 (citation omitted). Similarly, the right to the effective assistance of counsel is recognized, not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. *Cronic*, 466 U.S. at 658; *Strickland*, 466 U.S. at 696 ("the ultimate focus of inquiry must be on the fundamental fairness of the proceeding").

[49] *Posey v. State*, 966 S.W.2d 57, 71 (Tex. Crim. App. 1998) (Womack, J., concurring) ("the *Almanza* standard for finding reversible error in the omission of a charge without objection—the denial of a fair and impartial trial—is so high that when it is met, the defense attorney's failure to object would almost always amount to ineffective assistance of counsel.").

[50] *Almanza*, 686 S.W.2d at 172 (characterizing egregious harm).

[51] *Compare Strickland*, 466 U.S. at 689 (defendant must overcome the presumption that the challenged action might be considered sound trial strategy)*, with Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (defensive issues, lesser-included offenses, and evidentiary issues frequently depend upon trial strategy and tactics and so are not "the law applicable to the case" absent request).

13

These are not rules within the application of *Almanza* review but exemptions from it.[52] If an instruction would have been given if requested, this Court's refusal to deem defensive omissions erroneous is the functional equivalent of the deference given to counsel under *Strickland*.[53]

Finally, in addition to the diminished quality of representation enabled by *Almanza* and its redundancy in the face of IAC, it creates unnecessary inconsistencies on review. The inability to address all complaints about counsel's performance in an *Almanza* claim[54] often requires a writ, wasting judicial resources by covering the same charge error twice. Postponing a claim of unpreserved charge error until a proper IAC argument can be made would not hurt an applicant's chances for relief, and many claims would benefit from the opportunity to develop evidence of other failures of counsel. With this in mind, it would be unjust if the same circumstances—counsel did not request an instruction to the detriment of his client—yielded different results for the convicted party depending on how the appellant or applicant styled his claim.

---

[52] This Court's decisions to not apply *Almanza* are not limited to matters of strategy. *See Jimenez v. State*, 32 S.W.3d 233, 236-37 (Tex. Crim. App. 2000) (article 36.19 establishes the standard of review for charge errors, but does not apply to constitutional errors that were objected to). One must ask how viable *Almanza* is if it must be sidestepped to avoid an injustice.

[53] *See Young v. State*, 991 S.W.2d 835, 840 (Tex. Crim. App. 1999) (Womack, J., concurring) (failure to request an instruction raised by the evidence is not necessarily deficient performance).

[54] *See Arrington*, 2015 Tex. Crim. App. LEXIS 15, at *23-25 & n.3 (reproving court of appeals for its disregard of evidence "that would likely have been inadmissible had appellant objected to it at trial" because "the reasonableness of counsel's trial strategy is not before us in this appeal, and we do not consider that matter in conducting our egregious-harm analysis.").

Conclusion

When the court of appeals "find[s] that the erroneous jury charge denied Thomas the valuable right to have the jury decide his guilt on the proper basis and authorized a conviction for actions not alleged in the indictment[,]" it misunderstands the posture of this case. No one is arguing that appellant should be convicted of an offense for which he was not charged. This Court already decided that appellant is factually guilty of the offense alleged in the indictment and remanded for consideration of whether trial on that offense was fair even though the application paragraph differed from the indictment. In response, the court of appeals found harm because the application paragraph differed from the indictment. Respectfully, that circular reasoning, combined with its mistaken view of the record as a whole, resulted in a harm analysis that was fatally flawed. And it is further proof that review of unobjected-to charge error is better left to claims of IAC in applications for writ of habeas corpus, where they are often re-urged anyway.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, and that the decision of the Court of Appeals be reversed.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

   /s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.Texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool the applicable portion of this document contains 3,958 words.

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 29th day of January, 2015, the State's Petition for Discretionary Review was served electronically through the electronic filing manager or e-mail on the parties below.

Hon. Zan Colson Brown
Gregg County Assistant District Attorney
101 East Methvin Street, Suite 333
Longview, Texas 75601
zan.brown@co.gregg.tx.us

Hon. Tim Cone
P.O. Box 413
Gilmer, Texas 75644
timcone6@aol.com

/s/ John R. Messinger
JOHN R. MESSINGER
Assistant State Prosecuting Attorney

**APPENDIX**



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00046-CR

_____

CLISTER RAY THOMAS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 41776-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

# O P I N I O N

Clister Ray Thomas appealed his conviction of failure to comply with sex-offender registration requirements. This Court reversed the judgment of the trial court, finding that the evidence was legally insufficient to support the judgment. *Thomas v. State*, 411 S.W.3d 685, 693–94 (Tex. App.—Texarkana 2013), *rev'd*, 444 S.W.3d 4, 11 (Tex. Crim. App. 2014). The Texas Court of Criminal Appeals reversed our judgment, holding that the evidence was legally sufficient to support Thomas' conviction. *Thomas*, 444 S.W.3d at 11. In this opinion on remand, we are called on to consider whether Thomas was harmed by any error in the jury charge. *Id*. at 6. Because error in the jury charge egregiously harmed Thomas, we reverse the judgment of the trial court and remand for a new trial.

## I. Background

A detailed discussion of the facts of this case is included in our previous opinion. *See Thomas*, 411 S.W.3d at 686–87. For purposes of this opinion, we will confine our discussion of the facts to those pertinent to the issue before us.

The indictment against Thomas alleged,

> [O]n or about the 13th day of June, 2012, and anterior to the presentment of this Indictment, in the County and State aforesaid, CLISTER RAY THOMAS, hereinafter called Defendant, did then and there while being a person required to register with the local law enforcement authority in the municipality where the Defendant resided or intended to reside for more than seven days to wit: Longview, Texas, and being a person required to comply with the registration requirements of Chapter 62 of the Texas Code of Criminal Procedure and having a duty to verify registration annually for life because of a reportable conviction or adjudication for Aggravated Sexual Assault, did intentionally or knowingly fail to report in person to the Longview Police Department, the local law enforcement authority in the municipality where the Defendant resided and had last registered and provide the Defendant's anticipated move date and the new address

2

anticipated not later than the seventh day before the anticipated move date as required by the Texas Code of Criminal Procedure . . . .

As stated in our previous opinion,

> A person commits the offense of failure to comply with registration requirements if the person 'is required to register and fails to comply with any requirement' of Chapter 62. TEX. CODE CRIM. PROC. ANN. art. 62.102 (West 2006). Under article 62.055(a), "[i]f a person required to register under this chapter intends to change address, . . . the person shall, not later than the seventh day *before the intended change*, report in person to the local law enforcement authority designated as the person's primary registration authority by the department and to the . . . officer supervising the person and provide the authority and the officer with the person's *anticipated move date and new address*." TEX. CRIM. PROC. CODE ANN. art. 62.055(a) (West Supp. 2012) (emphasis added). Under the indictment, Thomas was only charged with failing to comply with this specific requirement. The indictment does not allege that Thomas failed to provide proof of his new address within seven days *after changing the address. See id.*

*Id.* at 688 (footnotes omitted).

The application paragraph of the jury charge, unlike the indictment, did not include the failure to comply with the registration requirements by failing to advise the Longview Police Department of the anticipated move date and new address at least seven days before the move: The charge read,

> You must decide whether the state has proved, beyond a reasonable doubt, four elements. The elements are that—
>
> 1. the defendant was previously convicted of aggravated sexual assault; and
>
> 2. the defendant was required to comply with the sex offender registration program under chapter 62 of the Code of Criminal Procedure; and
>
> 3. the defendant was registered with the Longview Police Department as a sex offender as residing at a residence in Longview, Gregg County, Texas; and

3

4. the defendant changed his address for more than seven days and intentionally or knowingly failed to report in person to the Longview Police Department to register the defendant's new address.

You must all agree on elements 1, 2, 3, and 4 listed above. If you all agree the state has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, 3, and 4 listed above, you must find the defendant "not guilty."

If you all agree the state has proved each of the four elements above, you must find the defendant "guilty."

The jury found Thomas guilty "as charged in the indictment." In sum, Thomas was indicted for failing to comply with sex-offender registration requirements by failing to notify the appropriate authorities at least seven days in advance of his intended move, but the jury was charged with the law pertaining to the commission of that offense by a manner and means not alleged in the indictment.[1]

## II.    The Jury Charge Was Erroneous

We employ a two-step process in our review of alleged jury charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

---

[1] A person commits an offense if the person is required to register as a sex offender under Chapter 62 of the Texas Code of Criminal Procedure and fails to comply with any requirement of the chapter. *See* TEX. CODE CRIM. PROC. ANN. art. 62.102(a); *Young v. State*, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011) ("Article 62.102 is a generalized 'umbrella statute' that criminalizes the failure to comply with any of the registration requirements set out in Chapter 62."). Chapter 62 contains numerous distinct requirements in its various statutes. *Id*. The language of Article 62.055, though, states that a sex offender has a duty to report a change of address to the proper authorities both before and after a move. The failure to do so is an offense. TEX. CODE CRIM. PROC. ANN. art. 62.102(a). However, "the Legislature intended for the unit of prosecution to be one offense for each change of address." *Young*, 341 S.W.3d at 426.

4

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). "'The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion.'" *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

Here, the charge does not track the language of the indictment. While the indictment authorized conviction based on Thomas' failure to inform the appropriate authorities of an anticipated change in address not later than the seventh day before the move, the jury charge authorized conviction only on proof that Thomas changed his residence for more than seven days without notifying the proper authorities of the new address.[2] Because the charge authorized a conviction on a theory different from that alleged in the indictment, the charge was erroneous. *See Nunez v. State*, 215 S.W.3d 537, 542 (Tex. App.—Waco 2007, pet. ref'd) (charge authorizing conviction on theory different from theory alleged in indictment was erroneous); *see also Kleese v. State*, 680 S.W.2d 664, 666 (Tex. App.—Fort Worth 1984, pet. ref'd) (when application paragraph authorizes conviction on theory not alleged in indictment, charge is fundamentally defective).

---

[2]The Court of Criminal Appeals described the hypothetically correct jury charge in this case as "one that authorized a jury to convict Appellant only (1) if he was required to register as a sex offender, and (2) he failed to report an anticipated change of address seven days before the intended change." *Thomas*, 444 S.W.3d at 10.

**III.    The Charge Error Was Egregiously Harmful**

The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Here, because Thomas did not object to the charge, we will not reverse unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), such that he did not receive a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In making this determination, we review "the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole." *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171). Direct evidence of harm is not required to establish egregious harm. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

The application paragraph of a jury charge specifies "'the factual circumstances under which the jury should convict or acquit[; they are] the 'heart and soul' of the jury charge.'" *Riley v. State*, No. 06-13-00210-CR, 2014 WL 5899094, at *1 (Tex. App.—Texarkana Nov. 14, 2014, no pet. h.) (quoting *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012)). "A charge that does not apply the law to the facts fails to lead the jury to the threshold of its duty: to decide those fact issues." *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977). Here, the

6

application paragraph was clearly wrong. Additionally, the charge also contains an instruction in the abstract section, immediately preceding the erroneous application paragraph:

> A person commits the offense of **"Failure to Comply with Sex Offender's Registration Requirements"** if the person is required to register and intentionally or knowingly fails to comply with a requirement of the sex offender registration program under Chapter 62 of the Code of Criminal Procedure, *namely*, *if a person required to register changes address*, *and fails to report in person to the local law enforcement authority in the municipality in which the person's new residence is located and provide the authority in the municipality in which the person's new residence is located and provide the authority [sic] with proof of identity and proof of residence*, *where a defendant has resided for more than seven days.*

(Emphasis added). Although this instruction is a correct statement of the law in the abstract, it is not a correct statement of the law as applied to this case. We, thus, conclude that the jury charge, as a whole, was erroneous. *See Almanza*, 686 S.W.2d at 171. The state of the evidence and argument of counsel exacerbate these errors. The jury charge deprived Thomas of the right to have the jury consider the proper standard to be used in determining if he was guilty of the particular offense alleged in the indictment.

At trial, Thomas defended against the offense as set out in the jury charge (failure to report after moving). He testified that he did not change his registered address of 1900 South Green Street, Apartment number 210, because he did not actually move from that residence. Although Thomas admitted that he told police that he lived at a different address on Houston Street, he explained that this misinformation was provided in an attempt to protect his family from eviction. Thomas further testified that, at some point after June 13, 2012, he attempted to change his registration to the Houston Street address by speaking with a clerk in the Longview office for sex-offender registration. He conceded, however, that he never changed his

7

registration from South Green Street, again explaining that he never moved from that address. Defense witnesses, including Thomas' girlfriend and her daughter, testified that Thomas continued to reside at the South Green Street address even after issuance of the criminal trespass warning.

In closing, defense counsel argued, "The last element, that he moved for more than seven days and failed to notify the Longview Police Department, I don't agree with. They're saying because he was given a criminal trespass warning, he moved." Counsel maintained that Thomas continued to live at the South Green Street address after he received a criminal trespass warning for that address, and to do so was not a violation of the sex-offender registration requirements.

Throughout the trial, the State likewise focused precisely on the offense as explained in the jury charge. The State argued that Thomas "didn't go back to change the old address as he was required to do" and did not attempt to register his new address until law enforcement "found him at the new address where he said he resides." In its closing argument, the State maintained that Thomas "broke the law when he failed to register his address *after* being criminally trespassed from 1900 South Green Street, Longview, Texas." (Emphasis added). And, in discussing the elements of the offense, the State asked the jury if

> this defendant changed his address for more than seven days and intentionally or knowingly failed to . . . make [the Longview P.D.] aware of it.
>
> . . . .
>
> And all he had to do was go to the P.D., he still hadn't done it. As we sit there, he still hasn't done it. All he had to do was go up to the P.D., meet Mr. Brownlee and say, "Listen, something happened." You heard the detective testify that sometimes they know things happen. He gets kicked out, he gets CT'd, they

8

know that. Maybe the house burns down. They go to him, they don't stick to that seven-day window, they work with you.

. . . .

And all you have to find is that sometime before this charge was brought – that's all we need to show, that sometime before this charge was brought and around the date that was said, he did change his address but didn't come to the P.D. to report it.

As aptly recognized by Judge Cochran in her dissent in this matter, "Everyone at trial— the judge, the prosecutor, the defense attorney, the jury—was focused solely upon the 'afterwards' change-of-address offense, the offense that appellant actually did commit but was not charged with." *Thomas*, 444 S.W.3d at 14 (Cochran, J. dissenting).

Although the Court of Criminal Appeals determined that the evidence was legally sufficient to support Thomas' conviction, *Id.* at 11, it would be nothing short of the rankest speculation to determine that the jury would have convicted Thomas had it been correctly charged. Considering the jury charge in its entirety, the state of the evidence, and the arguments of counsel, we find that the erroneous jury charge denied Thomas the valuable right to have the jury decide his guilt on the proper basis and authorized a conviction for actions not alleged in the indictment. Thus, Thomas was denied a fair and impartial trial.

In so finding, we reject the State's contention that, because the jury need only determine that Thomas violated his duty to report a change of address and because the State proved both a "before" and a "after" violation, Thomas was not harmed by the erroneous charge. In support of this contention, the State relies on *Young*, 341 S.W.3d at 427–28 ("Jurors must unanimously agree only that a sex offender failed to fulfill his reporting duty; they are not required to agree as

9

to how he failed that duty.").  In *Young*, however, the jury charge informed the jurors that "they could convict appellant if they found that he failed to give . . . notice of his change of address 'not later than the seventh day before his intended change of address' or 'not later than the seventh day after changing his address.'"  *Id*. at 421.  Unlike this case, the charge in *Young* tracked the indictment.  *Id*. at 419.  And, unlike this case, both the charge and the indictment alleged both the "before" and "after" manner and means of violating the relevant statute.  Here, the indictment alleged a failure to report before moving, and the charge instructed the jury to find Thomas guilty only on proof beyond a reasonable doubt that he failed to report seven days after moving.  We, thus, find the *Young* case inapposite.

## IV.    Conclusion

We reverse the judgment of the trial court and remand for a new trial.


Jack Carter
Justice


Date Submitted:      December 29, 2014
Date Decided:        December 30, 2014

Publish

10